tort and sue to recover the par value of the stock. The statute fixed the extent of liability, in a case of this description, when it provided that every holder of stock should be personally liable to its creditors, to an amount equal to the amount of stock held by him, for debts of the corporation contracted by the corporation while such stock was held by him. Even without such statutory provision, there was evidence in the case justifying the trial court in directing a verdict for the par value of the stock. It appears that stock was sold to subscribers at par shortly after the issuance of the certificate in controversy. This furnishes evidence of the value of this stock.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur, KRUSE, J., in result only, except FOOTE, J., who dissents.

PLACE v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. HIGHWAYS (§ 211*)—INJURIES FROM CONSTRUCTION—OBSTRUCTIONS IN HIGHWAYS.

Evidence *held* to support a finding that a tie against which plaintiff drove was negligently placed in the highway by defendant railroad company.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 526–532; Dec. Dig. § 211.*]

2. HIGHWAYS (§ 200*)—OBSTRUCTION—NUISANCE.

Where a railroad company's servants negligently left a tie in the beaten part of a highway, it constituted a nuisance.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 509; Dec. Dig. § 200.*]

3. HIGHWAYS (§ 197*)—OBSTRUCTIONS.

A traveler on the highway has a right to assume that it is in a reasonable condition for public travel and free from obstructions.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 482, 491–493, 498–503; Dec. Dig. § 197.*]

4. HIGHWAYS (§ 213*)—OBSTRUCTIONS—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action against a railroad company for injuries received by plaintiff on his vehicle colliding with a tie negligently left in the highway, the question of plaintiff's contributory negligence *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 535–537; Dec. Dig. § 213.*]

Appeal from Trial Term, Tompkins County.

Action by Charles A. Place against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Stanchfield, Lovell, Falck & Sayles, of Elmira, for appellant.
Willard M. Kent, of Ithaca, for respondent.

LYON, J. The judgment appealed from is based upon a verdict obtained by plaintiff for personal injuries sustained by him on the evening of June 2, 1910, as the result of being thrown .from the wagon in which he was riding by reason of the wheel having struck a railroad tie.

[1, 2] The plaintiff was driving southerly over the highway which ran along the easterly side of defendant's right of way, and while near Caroline Depot station, in the county of Tompkins, when the collision took place. This tie lay in a northeasterly direction diagonally crosswise of the westerly wheel track of the highway, and was about 8 feet long, 12 to 14 inches wide, 6 inches thick, and projected from 12 to 18 inches over the wheel track, with the southerly end somewhat elevated as it lay upon the bank, and, as one witness testified, was lying at an angle and looked as though it had "kind of slid off" the embankment, and was near the switch stand, and near an apple tree. The plaintiff offered proof that in the preceding month— another witness places the time in April—the defendant's section men, who were under one Tony Dominick as section boss, had unloaded ties from a box car by pitching them out of the car upon the ground opposite, or nearly opposite, the place where this tie lay in the highway. Defendant's roadmaster, Wynne, however, denies that a car load of ties was shipped into Caroline station over defendant's railroad prior to July 1st of that year. The plaintiff called no witness who testified to having seen the tie slide into the highway. However, one witness testified to having seen the tie in the highway the latter part of May, another to having seen it there the day before the accident, and the plaintiff testified that, while riding with defendant's station agent, Blinn, about one ·week before the accident, which the latter denies, he saw the tie in the highway in the position in which it was when his wagon wheel struck it on the evening of June 2d. A witness testified that he thought the tie was one of those unloaded from the car, and another witness testified that it was a new tie of the same length and size as others along the track there.

It appears that the railroad track upon which the car stood when unloaded was 23 feet from the highway and at an elevation of about 6 feet above the highway, and that there was no fence between the railroad lands and the highway. The height of the floor of the car above the track was not shown. The ground next to the highway was somewhat sloping, with a shoulder and ditch; but to what extent the ground sloped does not definitely appear, but defendant's section boss considered it sufficiently level to admit of piling ties thereon. One witness testified, regarding the manner of unloading the ties, that the men tipped them out of the car, and that he could see the ties tumbling and rolling, and that he thinks there were as many as 50 unloaded from the car. Had that number been unloaded in the manner testified to, it can be readily understood how the space between the railroad track and the highway might have become sufficiently filled to have allowed one of the ties last unloaded to slide over the pile into the highway. One end of this tie appears to have been split, inducing the suggestion upon the part of respondent that it was worthless for use as a tie, and hence had been thrown into the highway as a dis-

carded tie, or for that reason not recovered by the section men after having slid into the highway. There is no evidence of any tie being in the highway previous to the alleged time of unloading this car. Neither the section boss nor any of the section men who lived within a few rods of the place of the accident were called by defendant to deny the unloading of the ties opposite the place of the accident at the time or in the manner stated, or to testify that all the ties were properly piled on defendant's own land, or to in any way whatever combat the probability that the tie was one of those belonging to the defendant, which by reason of the manner of unloading had passed onto the highway, and the defendant offered no explanation whatever accounting for the presence of the tie in the highway, as indicated by the position in which the tie lay. In the absence of any such proof or explanation, the jury had the right under the evidence to find that the tie deposited in the highway, which constituted a nuisance, belonged to the defendant, and was so deposited through the negligence of the defendant at the time of unloading the ties.

[3, 4] As bearing upon the question of contributory negligence, it appears that the plaintiff resided on a farm situated on the west side of the railroad a short distance north of the station. Upon the evening in question he had come from his home, seated in an open wagon drawn by a single horse, which he said had no tricks, but was blind. He testified that he had gone along this highway, driving in the beaten track, about 20 or 30 rods, to a point a short distance south of the railroad station, traveling at a sharp trot, having just slapped his horse with the lines, when his wagon collided with the tie, and that it was then between 7 and 8 o'clock in the evening, not hardly dark, but twilight. He further says:

"I could see where I was driving. It was light enough so I could see where I was driving. I could see the apple tree. I think I could see the ties and the railroad. I could see the road. I could see my horse, a gray horse. I probably could have seen the ditch alongside of the road, if I had looked for it. I don't know whether I was looking for it. I was looking where I was going. I was going in the road and looking in the road."

The plaintiff had the right to assume that the highway was in a reasonably safe condition for public travel. The jury had the right to find that Station Agent Blinn, who had shortly before directed the witness Delmage where to pile the ties which he brought there, knew of the presence of the tie in the highway a week before the accident. Notwithstanding plaintiff testified to having seen it there at that time, the question of contributory negligence was fairly one for the jury under all the evidence bearing upon that subject.

The charge was fair, and was as favorable to the defendant as it had the right to ask. It was not excepted to by either party, and no requests to charge were made. I have examined the exceptions, and think that none call for a reversal of the judgment. The defendant did not appeal from the order denying the motion for a new trial upon the minutes, and raises no question as to the verdict being against the weight of evidence, and the question here is whether there was such a failure of proof as required the granting of a nonsuit. The judgment should be affirmed.

Judgment unanimously affirmed, with costs.