No. 30,319.

JOHN M. DAVIES, *Appellant*, v. E. B. SHAWVER, *Appellee*.

(8 P. 2d 953.)

Opinion filed March 5, 1932.

*W. N. Calkins,* of El Dorado, *H. W. Hart, Glenn Porter, Enos E. Hook, Edw. H. Jamison* and *W. G. McDonald,* all of Wichita, for the appellant.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by one who was township treasurer for damages for injuries received by him in being thrown from a road grader while grading a highway in his township, caused by the negligence of the defendant in leaving on the bank at the side of the road, two years before the accident, a length of two-inch gas pipe when he removed his gas line that had been in use for a few months near the fence along the east side of that road. The trial court sustained a demurrer to the evidence of the plaintiff, and he appeals.

Appellant first urges error in the court taking from the jury a question involving negligence because that is particularly a question for the jury and not one to be disposed of in a peremptory manner, citing many authorities to the effect that the question of whether the injured plaintiff was guilty of contributory negligence is ordinarily to be determined by the jury, but none of them hold that if the evidence of the plaintiff when considered in the most favorable light fails to show negligence on the part of the defendant or clearly shows contributory negligence of plaintiff, the sufficiency of plaintiff's evidence to establish his case should not be determined by the court on a demurrer to the evidence, instead of passing on its sufficiency after a verdict has been rendered. We recognize the propriety of using a demurrer to the evidence under the established lib-

eral rule as outlined and stated in the case of *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093, as follows:

"A demurrer to the evidence of plaintiff should not be sustained unless the court is able to say that, admitting every fact that is proven which is favorable to the plaintiff, and admitting every fact that the jury might fairly and logically infer from the evidence favorable to the plaintiff, still the plaintiff has failed to make out some one or more of the material facts of his case." (Syl. ¶ 2.)

While contributory negligence was pleaded by defendant in this case, it is not here urged in support of the demurrer, but three points as to the insufficiency of the evidence are particularly urged by the appellee, viz., that the leaving of the pipe on the roadside was neither negligence nor did the pipe so left amount in itself to a nuisance; that the leaving of the pipe was not the proximate cause of the injury; and plaintiff was not a traveler of the highway. The appellant contends all these features of the case were fully and amply supported by the evidence.

The evidence shows that in January or February, 1927, the defendant constructed a two-inch gas pipe line from a gas well of his in section 13 to a point in section 28, where he was about to drill another well, laying the line on top of the ground along this highway on the east side thereof on the bank near the fence. He discontinued the use of this line and removed it in May, 1927; a number of witnesses saw one length of that kind of pipe about eighteen or twenty feet in length lying on this·bank after the pipe line had been removed, and two other lengths were shown to have been left in a field where the line crossed; the road from fence to fence was forty feet wide, from shoulder to shoulder about thirty feet; the traveled portion of the road was about sixteen to eighteen feet wide; the grassy bank on the east side, where the pipe and pipe line lay, was about three feet wide; inside of that was a ditch from eight to twelve inches deep; the road was graded, some said once a year, others said less frequently, and when graded the ditch was deepened four or five inches; grass and weeds grew in the ditch and on the bank in the summer; these witnesses who saw a length of pipe on the bank say it was in the spring and summer after the line had been removed; some of the same witnesses later saw a length of pipe in the ditch opposite the place where they had seen a pipe on the bank; other witnesses saw a pipe in the ditch, and they all fix this time as in the summer or fall of 1927.

At the time of the accident, July 23, 1929, two years and two months after the pipe line had been removed, a two-inch pipe about this length was found about this place in or near the ditch on the east side of this road covered over with dirt four, five or six inches deep, when the extreme end of the extension blade of the grader on which plaintiff was riding and which he was operating, stuck in the end of a two-inch pipe so buried underground, and the pipe was bent so that it stood nearly five feet high and upset the grader, injuring the plaintiff, who was operating it and riding thereon.

Under the liberal rule stated above, it is fair to conclude that the defendant left on the bank at the side of this road the joint of pipe seen on that bank by the witnesses. It is also reasonable and fair to regard the pipe buried underground in or near the ditch at that side of the road at the time of the accident as the same pipe that was first seen on the bank after the line had been removed and was later seen in the ditch.

We have difficulty in following appellant to the conclusion that the leaving of the pipe on the bank was in itself a nuisance. There was nothing to indicate that the original laying of the pipe line, where it was laid and as it was laid, was without proper authority or permission, and the leaving of a length of pipe on the bank where the line was located does not necessarily constitute a part of the line a nuisance unless the line itself was a nuisance. The cases cited holding gas or oil lines to be nuisances were where the defective way and manner in which they were laid and the danger of explosions and fires when broken, made them nuisances. One of such cases was *Carlson v. Development Co.*, 103 Kan. 464, 173 Pac. 910, where a gas line was laid along a roadside twelve inches above the ground so that a horse caught his feet under the pipe and in his struggle to extricate himself overturned the buggy to which he was hitched. Another case cited was *Thompson v. Traction Co.*, 103 Kan. 104, 172 Pac. 990, where an exposed part of an oil pipe at a gap off a highway was broken by a threshing machine which used more than the worn part of the road, and the oil ignited and burned the machine. The reasoning of the case shows the liability was because of the inflammable and dangerous substance it carried, and it was said "it must be so laid that it will not obstruct or endanger the use of the highway for public travel." Another nuisance case in another jurisdiction, *Place v. Delaware, L. & W. R. Co.*, 141 N. Y. Supp. 970, was where a railroad company's servants negligently left

a tie in the beaten part of a highway. The essential ingredient of any obstruction placed on or at the side of a highway to constitute a nuisance is that it creates a dangerous condition, which could hardly be attached to an unused length of pipe on the bank at the side of the road. (29 C. J. 678.)

"An obstruction placed anywhere within the highway limits, although outside of the traveled part, may constitute a nuisance. The same is true of any object placed close to the roadway, constituting a present source of danger. But trees and shrubs, log chutes, hitching posts and horse blocks, and other objects placed on the side of the road so as not to interfere with the use of the highway, are not unlawful obstructions." (29 C. J. 619.)

Was the leaving of the length of pipe on the bank at the side of the road an act of negligence and the proximate cause of the injury sustained by the plaintiff? Appellant strongly urges the application of the Thompson and Carlson cases, cited above, and also another pipe-line case, *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 115 Pac. 581, to show negligence and proximate cause, but as we study them the dangerous use to which the pipes were put in carrying explosive and inflammable substance made the owners negligent by exposing the traveling public to unusual hazards which might easily have been avoided in differently placing or covering the pipe. The dangerous contents of the pipe is not in this case. The case begins with the leaving of a single length of pipe lying on the bank at the side of the road, very much the same as if the landowner had in repairing the fence left a post lying in the same place on the bank. And the fence post would naturally and inherently be regarded as possessing the same or very similar elements of danger. To make the leaving of the pipe on the bank the efficient cause of the injury, it must have produced the injury—not the pipe alone, but the leaving of it there. The defendant's active fault must have been the efficient cause of the injury (*City of Topeka v. Sash & Door Co.*, 97 Kan. 49, 154 Pac. 232), like creating a pitfall or excavation near the street or highway, as in *Bennett v. Bank*, 100 Kan. 90, 163 Pac. 625.

Several cases are cited where things piled by the side of the road and not on the used part thereof frightened horses, but these cases contain an element of danger similar to the oil and gas pipe-line cases that is not contained in or connected with the single length of pipe. There was nothing whatever dangerous about it where it was left on the bank. Cases where telephone poles and guy wires

are placed in the highway near enough the used part to be obstructions have the original element of interference in them not applicable to the piece of pipe on the bank, but if the placing of them there be conceded to be negligence it is not sufficient unless the accident or injury is one which might reasonably have been anticipated by a person of ordinary foresight and prudence, as was held in the case of *Simon v. Telephone Co.*, 97 Kan. 42, 154 Pac. 242:

"The defendant maintained a telephone line consisting of one wire supported on poles placed at the side of a public highway close to a hedge. At one place the wire sagged to within four feet of the ground. Plaintiff, who was traveling with a team and wagon, stopped at noon to rest and turned his horses out to graze on the road. A storm came up and the horses went to the side of the road close to the hedge for shelter. While standing under the wire where it sagged they were killed by lightning which first struck one of the poles 150 feet distant. The telephone wire was not in itself dangerous to persons or animals using the highway for ordinary purposes of travel, and even though it were held negligence to maintain the wire so close to the ground, it was not the proximate cause of the injury. That required a conjunction of conditions and circumstances of an extraordinary nature which it is not reasonable to say a person of ordinary prudence and foresight should have anticipated." (Syl.)

No one by the exercise of ordinary prudence and foresight could reasonably have foreseen or anticipated that some injury would likely result from the leaving of the length of pipe on the bank, and if not, the initial act is not actionable negligence.

"Negligence, to be actionable, must result in damage to some one, which result, in the absence of wantonness or *malus animus,* might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act.

"An allegation of negligence is not sustained by evidence of acts resulting in damage to another, which result is not the reasonable and ordinary outcome of such acts, and which would not have been foreseen or anticipated by the exercise of ordinary prudence and foresight under all the circumstances of the case." (*Cleghorn v. Thompson,* 62 Kan. 727, syl. ¶¶ 1, 2, 64 Pac. 605.)

During the two years and two months intervening between the leaving of the pipe on the bank and the accident and injury of the plaintiff two apparently unrelated and independent incidents must necessarily have happened. Some one must have taken the pipe from the bank and put it into the ditch or rolled it over and dropped it into the ditch where it was seen for some time, then it must have been covered over by some one or some force of nature. There is no concurrence of the initial wrongdoing in this case with such force of nature as in the case of *Meecke v. Morguies,* 128 Kan. 423, 278

Pac. 45, where the windstorm blew out a defectively installed window. There is no claim or suggestion that the first intervening act was by force of nature. These two succeeding events seem to be unrelated to the initial act except in the use of the pipe left there, and seem to be distinct and successive causes and to be the efficient and responsible causes rather than the leaving of the pipe on the bank.

In the recent case of *Smith v. Mead Construction Co.*, 129 Kan. 229, 282 Pac. 708, it was held:

"In an action in tort for damages, where it is admitted or the facts found establish that two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury, the question of remote and proximate cause becomes one of law for the court and is not one of fact for the jury, following *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338.

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case the law regards the proximate as the efficient and responsible cause and disregards the remote, following *Railroad Co. v. Justice,* 80 Kan. 10, 101 Pac. 469.

"Under the evidence in this case it is held, as a matter of law, that the negligence of the defendants was not the proximate cause of the injury." (Syl. ¶¶ 1, 2, 3.)

In the case of *Goodaile v. Cowley County,* 111 Kan. 542, 207 Pac. 785, where a high hedge fence obscured the view of an approaching automobile from the driver of a horse and buggy at crossroads, and the horse became frightened at the sudden appearance of the automobile, it was held the owner of the hedge fence was not liable.

The fact that the pipe was the instrument used in the intervening causes will not make the initial act of leaving the pipe the proximate cause, and the chain of events in this case is so broken and extended as to be independent of and unrelated to the initial act.

"But an intervening cause will be regarded as the proximate cause, and the first cause as too remote where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the primary cause, or one which ought to have been anticipated." (45 C. J. 928.)

"A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion." (45 C. J. 931.)

We conclude that the initial act in this case was not the efficient and proximate cause of the injury sustained and that there was no error in the trial court sustaining the demurrer of the defendant to the evidence of the plaintiff.

The judgment is affirmed.