No. 23,364.

Louis Lehnherr, *Appellee,* v. Henry Feldman et al. (J. N. Harrison et al., as the Board of Managers of The Kansas Soldiers' Home, *Appellants*).

SYLLABUS BY THE COURT.

1. Will—*Bequest to the Kansas Soldiers' Home—Home a Charitable Institution—Valid Bequest.* In the residuary clause of his will, a testator directed that the residue of his property, real and personal, should go to the Kansas State Soldiers' Home at Fort Dodge, Kansas. *Held:*

(a) That the institution is a charitable one within the meaning of the term as applied to the construction of conveyances by deed, or gifts and devises by will.

(b) Notwithstanding the home is subject to be changed and its scope and purpose enlarged as the legislature in its wisdom may deem advisable, it is none the less a permanent institution and capable of taking property by gift or devise.

(c) Although the bequest defines no specific purpose for which the property devised shall be devoted, the designation and limitation of the uses to which the property may be applied is found in the name and nature of the devisee.

Appeal from Nemaha district court; William I. Stuart, judge. Opinion filed December 10, 1921. Reversed.

*Richard J. Hopkins,* attorney-general, and *J. K. Rankin,* assistant attorney-general, for the appellants.

*R. M. Emery, R. M. Emery, jr.,* and *F. N. Prout,* all of Seneca, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Alfred W. Lehnherr, a resident of Nemaha county, died, and on the 17th day of October, 1919, his will was duly probated. The will bequeathed to the defendant, Henry Feldman, the sum of $20,000 and provided that the residue of the estate, real and personal, should go to the Kansas State Soldiers' Home at Fort Dodge, Kan. The plaintiff, Louis Lehnherr, is the brother and only heir at law of the testator, and brought this action to set aside the residuary clause of the will on the ground that the soldiers' home is not a charitable institution within the meaning of the law governing charitable bequests.

The defendants, who are the managers of the soldiers' home, demurred to the petition, and appeal from the decision of the trial court overruling their demurrer and in rendering a judgment declaring that the plaintiff is entitled to take under the residuary clause.

The persons who are entitled to the benefits and privileges of the soldiers' home at Dodge City are thus described in the statute:

"All honorably discharged soldiers, sailors and marines, who served in the army, navy or marine corps of the United States during the war of the rebellion or the Spanish-American war or Phillipino insurrection, or the Cuban campaign, and who were honorably discharged, who may be disabled by disease, wounds, old age or otherwise disabled, and who have no adequate means of support, and who, by reason of such disability are incapacitated from earning their living, and who would otherwise be dependent upon public or private charity, together with such members of their families as are dependent upon them for support, and not prohibited by the provisions of chapter 304 of the Session Laws of 1917, shall be entitled to admission to such institution, subject to the rules and regulations that may be established by the board of managers for the management and government thereof." (Laws of 1919, ch. 301, § 1.)

It has been well said that—

"It is immaterial whether the purpose is called charitable in the gift, if it is so described as to show that it is charitable in its nature." (*Jackson v. Phillips and Others,* 14 Allen [Mass.], 539, 556.)

The soldiers' home is one of the charitable and benevolent institutions established by the state. It is true that it is supported by appropriations of the legislature and by a donation made an-

Lehnherr v. Feldman.

nually by the United States government. In 1891 the legislature passed an act formally accepting the provisions of an act of congress donating to each state maintaining a soldiers' home $100 per capita per annum, to assist the state in maintaining such home. The statute provides that all bills and accounts for maintaining the home shall be "paid by the state treasurer out of any money appropriated or donated for that purpose." (Gen. Stat. 1915, § 10574.)

It is plaintiff's contention that the expression "or donated for that purpose" does not contemplate money that might be donated by individuals, but was intended solely to include the annual donation provided by the federal government. On the other hand, defendants rely upon the same language as a legislative recognition of the right of the soldiers' home to receive donations from any source. It would seem that if the legislature had intended to restrict the right of the institution to accept donations to the particular one made annually by congress it would have found appropriate language to indicate such an intention. The use of the general expression may be said to recognize the right of the home to receive donations from any source. We do not regard this consideration as controlling.

In our opinion, the institution is clearly a charitable one within the meaning of the term as applied to the construction of conveyances by deed, or gifts and devises by will. It is the settled rule that courts will look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law.

It has been held that a testamentary disposition for the benefit of the poor of a definite locality is a charitable use. (*Trim's Estate, Trim's Appeal,* 168 Pa. St. 395.) In that case the residue of an estate was " 'to go to the benefit of the poor of Eldred township, Warren county, Pa.; to have the use and nothing more  .  .  .  for the benefit and use  .  .  .  and when fully proven up to be managed by the overseers of the poor in said county for the benefit of Eldred township.' " (Syl.) It was held that the trustees were sufficiently designated, notwithstanding their correct corporate name was not given, and that the devise was a charitable use.

It is urged by the plaintiff that the soldiers' home as an institution of the state has no permanency because it is subject to be altered, its purpose enlarged as to its object, or discontinued entirely as the legislature in its wisdom may deem best. The will in

this case was executed on June 22, 1918, when this country had upwards of a million of its youth on foreign soil engaged in the World War, and when millions more were being transferred overseas or were in training camps preparing for the same service. The testator lived a year and a half after the execution of his will. He may have considered the probability that the legislature in the future will enlarge the scope and purpose of the soldiers' home and open its doors to the disabled soldiers of the World War. There is no merit in the contention that the institution is not a permanent one, merely because its purposes may be enlarged as the legislature from time to time may deem advisable.

The fact that the home is supported by appropriations raised by taxation makes it none the less a charitable institution. The language of the statute creating the institution shows it to be charitable in its nature.

Another contention is that the bequest is indefinite because it defines no specific purpose for which the property devised shall be devoted. Counsel for plaintiff say in their brief:

"Was it intended by the testator that it should be used to purchase clothing, fuel, provisions? The will does not so state. Was it to be used in educating the members of the home? Such purpose cannot be gathered from the clause itself. Was it to erect a library or other building?"

The same contention was urged in the case of *Carder v. Com'rs of Fayette County,* 16 Ohio St. 353. In that case one Peter Carder bequeathed to the county of Fayette in Ohio his farm on condition that the county should pay to his wife certain income yearly as long as she lived. The same general objections were raised to the validity of the instrument that are urged against the will now under consideration. It was insisted that neither the county nor its commissioners possessed power to hold real estate given by devise; that the devise, *eo nomine,* and not to the county's corporate agents, the board of county commissioners, was void because the will failed to specify the uses to which the property was to be appropriated. In the opinion it was said:

"It remains to inquire, whether the devise is void because it designates no *uses* to which the property is to be applied. A county can hold and use real estate only for certain specified public purposes—the support of the poor, the administration of justice, the maintenance of local government and the establishment and repair of roads and bridges. But is it necessary expressly to name these uses, or any of them, in a devise or grant to the county? If any are named, the land must be applied to them, and cannot be used for other lawful county purposes. But if the testator, or donor, intends the land donated

to be used for *any and all* legitimate and proper *county purposes,* is it necessary in the will or deed to say so in that form of words? Unsophisticated men would hardly think so. They would be apt to believe, as we do, that a designation and limitation of the uses to which the property may be applied is found in the name and nature of the devisee or grantee. A devise to a county, or to the commissioners of ·the county, is a devise for any and all lawful county uses. Should the county authorities, after acceptance of the gift, undertake to apply the property to unlawful uses, it would be the business of the public, and not of the donor's heirs, to interfere and prevent the perversion. What we have to do with now is, the power of the county to *accept* the gift. The subsequent *use* or abuse of it is a different thing, and does not belong to the present case." (p. 370.)

So, in this case, if we look to the name of the devisee and the nature of the institution and the purpose for which it was created, we have no difficulty in discovering generally the uses to which the property is to be applied.

The statute of wills provides that—

"Any person of full age and sound mind and memory, having an interest in real or personal property of any description whatever, may give and devise the same to any person by last will and testament lawfully executed, subject nevertheless to the rights of creditors and to the provisions of this act." (Gen. Stat. 1915, § 11752.)

The statutory rules in the construction of statutes provides that the word "person" may be extended to bodies politic and corporate, and this court has held that the United States is a "person" within the meaning of an act making it an offense for any person "to cut down, injure or destroy, or take.or remove any tree, timber, rails or wood standing, being or growing on the land of any other *person."* (*The State v. Herold,* 9 Kan. 194, syl. ¶ 1.)

If the United States is a "person" within the statutory definition of that word, it requires no great stretch of the language of the statute to hold that the soldiers' home at Dodge City is a "person" capable of taking under the residuary clause of the will in this case.

In *Delaney v. City of Salina,* 34 Kan. 532, 9 Pac. 271, after holding that a bequest to a city of property, real and personal, for the purpose of prospecting for and developing a coal mine in or near the city was valid, it was said in the opinion:

"If neither the executor nor the city of Salina has the power to execute some particular portion of the trust attempted to be reposed in either, the court could easily find and appoint some suitable person to execute such trust. And if the trust cannot be executed precisely as it was intended, the court may, under the doctrine of *cy ·pres,* approach it, or require that the nearest thing to it shall be performed." (p. 540.)

In *Schnack v. City of Larned,* 106 Kan. 177, 186 Pac. 1012, the residuary estate of the testator was devised to the city with a declaration that "the income from these investments shall be used by the city of Larned or its park commissioner for the purpose of maintaining a public park, which shall bear my name, to be located in or near the city of Larned, Kansas, and for no other purposes." (p. 178.) In the opinion it was said:

"The city may not have an officer of that particular title; and, if it has, the income is not devised to him and his successors in office; he is merely the servant of the city whom the testator suggested as a suitable functionary to manage the city park provided for by his bounty. A city can only act through its officers, agents, and servants; and whichever of these is directed by the city to manage the park will be a proper 'park commissioner' to satisfy the will." (p. 181.)

It is true that the Kansas Soldiers' Home has none of the powers of a corporation. It cannot sue or be sued, and the title to property used by it ordinarily vests in the state. The attorney-general in his brief makes the contention that, in effect, the devise in this will is to the state of Kansas. On the other hand, as suggested, the state is not mentioned except as the name of the state is a part of the name of the residuary legatee. It is hardly conceivable that the testator believed that he was devising, or that he intended to devise, property to the state of Kansas, although the reasonable presumption is that he understood that the executive department of the state would continue to name the persons who were to act as trustees of the property. There is nothing in the will to suggest that the testator intended to make the state the direct beneficiary of his will, or that he intended the money derived from the sale of his property to be paid into the state treasury and become mingled with the general funds of the state. That would merely benefit the taxpayers by lessening the amount necessary for the legislature to appropriate for the ordinary needs of the soldiers' home. There are many separate funds in the hands of the state treasurer, which he holds only as a convenient custodian, such as the bank guaranty fund, fiscal agency funds, cash deposits for the faithful performance of contracts, and the like, which do not require legislative appropriations in order for the treasurer to disburse them.

It seems more reasonable to assume that the testator intended the inmates of the home to receive some special benefits from his bounty; that he had in mind the thought that institutional life under

most favorable conditions is merely a bare, monotonous existence; that it is usually a misnomer to call such a place "a home." The legislature makes appropriations to provide shelter, clothing, food and medical attendance for the inmates, but there are the little things in the nature of luxuries which would add to the comfort and the enjoyment of the daily life of the inmates of such an institution which are not provided for in the legislative appropriations, and it was these that the testator desired provided for by the funds from the sale of the residue of his estate. Necessarily the detailed uses to which this bequest may be devoted must in large measure be left to the official discretion of the board of managers of the state soldiers' home, but so long as it is devoted to the benefit of that home by any use in harmony with the general humanitarian purposes for which the institution was founded, the bequest will neither fail nor lapse, nor can the heirs of the testator complain.

When once a devise or grant is determined to constitute a charitable trust, courts look with liberality on the instrument creating it for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded. Moreover, when it is ascertained that the donor intended to create a public charity it will not be allowed to fail because the trustee is indefinite or uncertain or incapable of taking. The contention here that the trust must fail because of the uncertainty of the trustee, overlooks the maxim that equity will never allow a trust to fail because of the want of a trustee. And for any misuse or attempted misapplication of the proceeds, the courts afford an ample remedy. In *Doughton v. Vandever*, 5 Del. Ch. 51, it was said:

"I shall attempt no enumeration of the various gifts which have been declared charitable. It is only necessary to remark that trusts for religious and educational purposes, and for the benefit of the poor, the sick, the afflicted, the helpless, are charitable. They are governed by the rules that apply to trusts for private benefit. The intention of the donor is ascertained by the application of the same rules of construction. Where, however, it is plain that a public charity is intended, different rules from those applied to private trusts may be invoked in order to give effect to the intention of the donor, and to establish the charity. A public charity will not fail by reason of the fact that the trustee is uncertain, or is incapable of taking, or that the objects of the charity are uncertain and indefinite. These, however, would be fatal to gifts for private benefit. The greatest favor has for many centuries been shown by those who make and administer the laws to gifts for public charities. This favor is clearly discernible in the history of Roman legislation and juris-

prudence. Writers on the civil law furnish the clearest evidence of the peculiar regard in which testaments for charitable purposes were held." (p. 62.)

We are unable to find that the facts and conditions in the present case are, as plaintiff claims, similar to or identical with *Kennett v. Kidd,* 87 Kan. 652, 125 Pac. 36, which was affirmed on rehearing in 89 Kan. 4, 130 Pac. 691. There the testator attempted to make his local camp of the Modern Woodmen of America. his residuary legatee. The decision turned upon the provisions of the statute authorizing a local camp to hold only such real estate, including buildings, as might be necessary to provide for the accommodation of the business of the local camp. It was held that the camp cannot lawfully hold real estate except to the extent authorized by the statute.

The judgment is reversed and the cause remanded with directions to sustain the demurrer and give judgment in favor of the defendants for costs.