No. 32,684

Pearl McMillen, *Appellee*, v. Summunduwot Lodge No. 3, Independent Order of Odd Fellows, *Appellant*.

(54 P. 2d 985)

Opinion filed March 7, 1936.

*James L. Hogin,* of Kansas City, for the appellant.
*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The appeal in this case is by the defendant from the order of the trial court overruling its demurrer to the amended petition of the plaintiff.

The defendant urges two particular reasons why the amended

petition is insufficient to state a cause of action against the defendant: First, that appellant is a charitable and benevolent organization and is, therefore, not liable in damages for the negligence of its employee; and second, that the petition as amended fails to allege any actionable negligence against appellant.

The amended petition has attached to it a copy of the charter issued to the defendant under the laws of Kansas. The name of the defendant is "Summunduwot Lodge No. 3, Independent Order of Odd Fellows." The amended petition alleges that the defendant is a fraternal organization or corporation, and then alleges that it is the owner of a three-story brick building in Kansas City, Kan., the first floor thereof consisting of business or storerooms, the second floor containing office rooms and the third floor lodge rooms, and "that defendant for many years has and does now rent said business rooms, office rooms and lodge halls to various persons and organizations, charging therefor and deriving profit therefrom." The amended petition further alleges:

"(4) That the organization known as the White Shrine, of which this plaintiff is a member, held its regular meetings in the lodge hall of the defendant on the third floor of said building and paid the defendant rental for the use thereof; that located in said lodge hall is a wooden floor and a certain platform, the floor of said platform being approximately twelve to fourteen inches above the surface of said lodge-hall floor.

"(5) That at all times hereinafter mentioned the defendant has employed one Herman C. Voight, who was the custodian of said building for said defendant, and acting within the scope of his authority. That said Herman Voight was employed to and did the work of waxing and polishing the floors of said lodge hall and platform and on many occasions prior to February 8, 1935, he polished the flooring of said platform with certain wax, which wax was applied to said platform by the said Voight on an average of at least twice each week for several weeks prior to February 8, 1935; that some time prior to February 8, 1935, the exact date being unknown to plaintiff, the said Herman Voight had waxed said platform and polished the same and had left on said platform a large piece of hardened wax approximately one to one and a half or two inches in diameter, and because of said wax being left thereon, the flooring of said platform and said piece of wax referred to became slick, smooth, hardened and slippery, and by reason thereof created a dangerous condition, which condition was known, or by the exercise of reasonable care by the defendant, its agents, servants and employees, could have been known to said defendant, and have been removed in ample time to have prevented plaintiff slipping thereon as hereinafter alleged.

"(6) Plaintiff further states that on or about February 8, 1935, at about 8:30 p.m. of said date, she was attending a meeting of the White Shrine Lodge to which she belongs, which meeting was then and there being held in

the lodge room on the third floor of the building owned by the defendant, as hereinbefore alleged, and went to the platform in the east end of said lodge hall and hereinbefore referred to, for the purpose of paying her dues to the secretary of the White Shrine Lodge, whose desk was located on said platform. That plaintiff stepped upon said platform, transacted some business with said secretary, and started to walk from said platform, when her right foot came in contact with said piece of hardened wax or other foreign substance, the exact nature or description of which is unknown to plaintiff at this time, and by reason of the presence of said substance and the slippery, smooth, slick and dangerous condition of said foreign substance on said platform floor, plaintiff was caused to and her feet did go out from under her, causing her to be thrown violently from said platform to the floor of said room, and as a result thereof she suffered a fracture of the bones in her right leg approximately one to two inches below the hip joint, and also suffered severe bruises and contusions to her legs and body. That as a result of said injuries plaintiff was rendered sick, sore and lame and was caused to suffer and still continues to suffer and for a long time in the future will suffer severe pain and mental anguish, and all of said injuries are permanent, progressive and lasting, and she has and will continue to lose sleep and received a severe nervous shock.

"(7) Plaintiff further states that prior to the time she received said injuries she was a strong, able-bodied woman, married, able to and performing the duties of a housewife, and as a result of said injuries she will be permanently crippled and unable to perform the duties of a housewife, to her damage in the sum of $1,000.

"(8) Plaintiff further states that her injuries were caused by and were the direct result of the carelessness and negligence and omissions of the defendant as hereinafter named, in the following particulars, to wit:

"(a) That defendant was careless and negligent in causing or permitting the floor of said platform to be excessively slippery and dangerous to persons walking upon the same, and that several persons whose names are to this plaintiff unknown, had slipped and fallen upon said floor and platform prior to the time plaintiff slipped thereon.

"(b) That defendant was further careless and negligent in causing or permitting the above-described foreign substance or piece of wax to be and remain upon the floor of said platform, and in permitting said foreign substance to stay and remain thereon, and in so polishing the floor of said platform as to cause the same and the piece of foreign substance or wax to become excessively slippery and dangerous, and in failing to remove the slippery and dangerous condition and said foreign substance from the flooring of said platform;

"(c) The defendant was further guilty of negligence in failing to place warning signs or warn persons lawfully using said platform of its dangerous and slippery condition, all of which defendant knew or by the exercise of ordinary care and caution and due consideration for the safety and protection of its invitees might or could have known of the presence and existence of said dangerous and slippery condition and said foreign substance upon the floor of said platform, and that the same if left upon said platform unguarded, or without any device to warn people visiting said platform or

stepping thereon of its presence was a menace and danger to life and limb and likely to cause persons to slip and fall, and that said defendant with the facilities at hand could have removed said foreign substance from said platform and removed the slippery condition thereof and thus have prevented the plaintiff being injured, but all of which defendant failed, refused and neglected to do."

The defendant subordinate lodge could have existed as a fraternal organization by the authority of the Grand Lodge of the Independent Order of Odd Fellows without obtaining a charter from the state, but it chose to become incorporated under the laws of the state, and R. S. 17-1701 gives it that privilege by listing among others given such privilege a subordinate lodge of the Independent Order of Odd Fellows, and providing that when it is so organized it shall have all the powers and privileges and be subject to all the restrictions in the act contained for the objects named in the charter, and to do and perform all other acts in accordance with the objects of the lodge.

The charter obtained by the defendant, in addition to containing provisions and authority for doing and performing the ordinary lodge duties, contained the following provisions:

". . . to contract and be contracted with, and to sue and be sued in all the courts of the state of Kansas; to lease, purchase, hold, sell, and convey real estate and personal property, or acquire the same by donation or bequest."

R. S. 17-1703 provides as follows:

"That any such building or buildings as are provided for herein may be used in part for other purposes."

R. S. 17-1705 is as follows:

"Such subordinate organizations may contract, sue and be sued through its trustees or managers, in any matter affecting such real estate or buildings: Provided, That no judgment rendered against such organization shall have any force or effect except as against the property owned as provided herein."

R. S. 17-103 is as follows:

"Private corporations are of three kinds: First, corporations for religion; second, corporations for charity or benevolence, and third, corporations for profit."

This incorporated subordinate lodge of Odd Fellows must necessarily be one of the three only possible private corporations, for religion, for charity or benevolence, or for profit. We find no difficulty in classing it as a corporation for charity or benevolence. In choosing to avail itself of additional powers and privileges afforded by incorporation it became subject to the restrictions im-

posed by the same statute which increased the powers by incorporation. These additional privileges and restrictions do not make the lodge a corporation for profit any more than a corporation for religion. Besides it outlined in the charter, which the statute provided a subordinate lodge of Odd Fellows might take out, many things which it might do that could be for no other purpose than for gain or profit. There can be no other purpose in leasing property to others than for the financial return or profit. A corporation for profit would not become a religious or charitable organization if the statute permitted it and it worked into its business affairs some religious or charitable enterprises. So this defendant lodge is still a charitable or benevolent organization with statutory and charter powers and privileges of a different kind and also with restrictions that accompany such additional privileges. What else could sections 17-1703 and 17-1705 mean than that the lodge had a dual capacity when it referred to the building being used in part for other purposes and the lodge making contracts and being used in any matter affecting such real estate or buildings and limiting its liability to such real estate or buildings?

Appellee cites cases where mutual-benefit associations were held not to be charitable or benevolent. There is nothing in the petition or charter in this case to class this defendant with such societies.

Appellee also cites the case of *Odd Fellows v. Spaeth,* 81 Kan. 894, 106 Pac. 1077, which it is urged should be controlling for the reason that the plaintiff therein is the same organization as the defendant in this case, and it was stated in the *per curiam* opinion in that case that this defendant lodge was not "a benevolent and charitable corporation." But that was a tax exemption case and the above expression was in connection with the definition of benevolent and charitable organizations given in the case of *Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005, which held:

"The provision of section 1 of article 11 of the constitution of Kansas that 'all property used exclusively for . . . benevolent and charitable purposes . . . shall be exempt from taxation' should be strictly construed, as should the similar provision of section 2 of chapter 408 of the Laws of 1907. So construed, these provisions exempt from taxation only such property as is used exclusively, directly and immediately in dispensing charity." (Syl. ¶ 1.)

It is worthy of note that both the constitution (art. 11, § 1) and R. S. 1933 Supp. 79-201 enumerating in detail the specific exemptions allowed from taxation require the use of the property to be exclusively for benevolent or charitable purposes. And such re-

quirement of exclusive use justified the expression in the above tax case of this defendant lodge that it was not such a benevolent and charitable corporation, because the use of its property was not exclusively for that purpose, as required by both constitution and statute.

The reason for devoting so much consideration to the question of the defendant being a charitable or benevolent organization is because of the theory and urgency of the appellant that if it is such, it cannot be held liable for a tort alleged to have been committed by it or one of its agents or employees. Appellant cites four cases in particular, viz.: *Nicholson v. Hospital Association*, 97 Kan. 480, 155 Pac. 920; *Davin v. Benevolent Association*, 103 Kan. 48, 172 Pac. 1002; *Webb v. Vought*, 127 Kan. 799, 275 Pac. 170; and *Ratliffe v. Wesley Hospital*, 135 Kan. 306, 10 P. 2d 859, to show that in Kansas charitable and benevolent corporations are not liable in tort even for the negligence of their servants. The first case above cited was against a railroad hospital association supported by the monthly contributions of all the railroad employees, brought by an employee for an injury resulting from the negligence of the physicians and attendants. The second case was against a benevolent organization for the breach of a contract made by the physician in charge with the plaintiff for proper care and attention. The third was against the Salvation Army for injuries sustained in a collision with a motor truck driver by an employee of the Salvation Army. The fourth case was against a hospital corporation, organized and maintained for ministering to the indigent sick and wounded, alleging damages on account of the carelessness and negligence of a nurse resulting in the injury of the plaintiff. Nothing is said in any of these cases about ownership or use of property or the work or attention given resulting in any income or profit to the defendants. The textbooks show a wide diversity upon this question of liability of such organizations for torts, holding generally that they are not liable. 11 C. J. 375 states in this connection:

"The exemption of a charitable institution from liability for torts does not extend to torts arising in the course of work not connected with the charity. . . . "

The citations and quotations heretofore made in this opinion from article 17 of chapter 17 of the Kansas statutes show plainly the dual capacity available to such organizations as the defendant and the restrictions and limited liability that go with such double

privileges, which are confirmed by the language of the charter in this case, a portion of which is quoted above. The defendant, although a charitable and benevolent organization, assumed the dual capacity, and with it the limited liability provided and imposed by the statute when it incorporated with the privilege of transacting additional business under such statute.

Appellant contends that the petition fails to allege any actionable negligence, and cites numerous cases from this and other jurisdictions to support that theory. For this very reason more of the petition has been set out in the opinion than usual so that it might be considered in connection with the discussion of defects therein.

Appellant insists that the allegations of the petition refer to something that was not likely to occur and no one is required to so conduct his affairs as to prevent accidents which are not likely to happen; that the result in damages could not have been reasonably foreseen by one of ordinary intelligence and prudence and be the probable result of the initial act. Cases are cited where the alleged cause of the injury was so unforeseen and the result so improbable as to make the defendant an insurer against results similar to accidents. That is not the definition of actionable negligence. The case of *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, cited by appellant, gives a good and practical definition of actionable negligence as follows:

"Negligence, to be actionable, must result in damage to some one, which result, in the absence of wantonness or malus animus, might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act." · (Syl. ¶ 1.)

The petition we think contains allegations of facts and circumstances which bring it fully within this definition. Both parties refer to the case of *Headington v. Central Building Co.,* 137 Kan. 350, 20 P. 2d 816, which came here after a demurrer to the plaintiff's evidence had been sustained and not on a demurrer to the petition, and this court reversed the ruling as to the evidence being insufficient, and held:

"In an action for damages for injuries sustained by plaintiff in falling on the slippery floor of defendant's office building, the evidence examined, and held sufficient to support her cause of action for damages for its negligent maintenance." (Syl. ¶ 1.)

The case of *Davies v. Shawver,* 134 Kan. 772, 8 P. 2d 953, was where the defendant in removing a private gas line from the bank

of a highway left a length of it near the fence. It was later covered over with dirt and about two years thereafter in the operation of a road grader the pipe overturned the grader and caused an injury, and it was there held:

". . . the length of pipe so left does not in itself appear to constitute a dangerous nuisance nor the leaving of it there actionable negligence." (Syl. ¶ 1.)

45 C. J. 631 defines actionable negligence as follows:

"To constitute actionable negligence there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. . . . In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant. When these elements are brought together, they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient. A judicial definition bringing out with admirable conciseness the elements of actionable negligence is as follows: 'Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred.'"

The petition, we think, contains all three of these elements as allegations, and the piece of hardened wax or other foreign substance left on the floor, as alleged in the petition, could easily be an unintentional breach of duty or carelessness, the damage resulting from which in such condition and position as alleged was reasonably foreseeable.

Appellant urges that the petition is insufficient because there is no allegation of negligence of the defendant in not exercising reasonable care in the employment of the custodian of its building, citing the case of *Nicholson v. Hospital Association,* 97 Kan. 480, 155 Pac. 920, which does hold that to be a necessary allegation as to charitable hospitals in not exercising care in the employment of its physicians and attendants. But such a rule would not apply to a custodian of a building where offices and rooms are rented. Many other cases are cited which decide as to the insufficiency of the evidence. Here we are concerned only with the question of the sufficiency of the allegations of the petition upon demurrer thereto, and we conclude that they are sufficient and that the demurrer was properly overruled.

The judgment is affirmed.