No. 36,080

Mrs. J. M. Leeper, *Appellant,* v. The Salvation Army, *Appellee.*

(147 P. 2d 702)

Opinion filed April 8, 1944.

*W. K. Thompson,* of Topeka, argued the cause, and *Hall Smith,* of Topeka, was on the briefs for the appellant.

*E. R. Sloan,* of Topeka, argued the cause, and *W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by the lessor of a building against the lessee, the Salvation Army, to recover for fire damage to plaintiff's buildings alleged to have resulted from the negligence of defendant's agents. The trial court sustained defendant's motion for judgment on the pleadings and from that ruling plaintiff appeals.

The pleadings consisted of the petition, a verified amended answer and an unverified reply. The pertinent portions of the petition, in substance, alleged:

Plaintiff is the owner of the real estate in question situated in the city of Topeka; defendant is a corporation legally authorized to do business in Kansas; in connection with the operation of its business it rented from plaintiff a building; adjacent thereto was another building which plaintiff had rented to a third party; among defendant's activities is the collection of waste paper by donation from the

public and baling and selling the same for profit; upon request of Major L. A. Peterson, defendant's duly appointed and authorized agent in charge of its property and who transacted defendant's business in Shawnee county, plaintiff permitted the collection of waste paper on the premises; such permission was granted on Peterson's representation the paper would be removed from the premises within four or five days, or not longer than one week; no additional charge was made for the privilege granted with respect to such paper; the paper was permitted to remain on the premises for longer periods than authorized and constituted a fire hazard and nuisance; on numerous occasions plaintiff notified defendant to remove the paper immediately, but defendant failed to do so; while the premises were littered with paper a fire started at the southern edge of the property and destroyed plaintiff's buildings; the loss was the result of defendant's negligence.

The verified amended answer admitted Peterson's agency. After denying generally the allegations of the petition not admitted, the answer alleged defendant's incorporation under the laws of Kansas and set forth its charter which, insofar as material, provides:

"That this corporation is organized not for profit and the purposes for which it is formed are to engage in charitable, educational, missionary, philanthropic and religious work of the character that has been and is being conducted by the branch of the Christian Church known as The Salvation Army, and to do everything and carry on every kind of operation necessary and incidental to the maintenance of such work. This corporation . . . may from time to time transact any business and carry on any work or operation in· connection with and for the purpose of the foregoing . . . and shall have generally all the rights, privileges, immunities and powers granted to religious or charitable corporations in their secular affairs and such other powers as shall be given said corporations by the laws of the State of Kansas."

Facts further alleged in the answer, in substance, were:

When defendant rented plaintiff's building there were weeds and grass on the place which extended to the southeast of the leased building and to the boundary of the premises; the fire approached· the building from the southeast; it did not originate among the scrap paper but was carried to the paper by the weeds and grass which plaintiff permitted to grow and dry on the premises.

Plaintiff's unverified reply denied generally all new matters alleged in the amended answer and specifically denied that her own negligence or the acts of her agents in the maintenance of the premises caused the fire.

Appellee relies upon our former decision in *Webb v. Vought*, 127 Kan. 799, 275 Pac. 170, in which we held:

"The Salvation Army, a religious, charitable and philanthropic organization, is not liable in damages for the injury sustained by a third person in a collision with a motor truck negligently driven by an employee of the Salvation Army." (Syl.)

In the opinion it was said:

"It is argued that the Salvation Army, being a religious, charitable and philanthropic organization doing work of that nature, is not liable for the negligence of Vought whereby injury was sustained by the plaintiff. The liability of charitable organizations for injuries caused by the negligence of agents or employees working in or for such organizations has often been presented to the courts of this country. The decisions are in hopeless confusion and irreconcilable conflict. . . .

"Any rule followed by this court will have ample authority to support it. An analysis of the authorities will not do any good." (p. 800.)

In the same opinion the court further said:

"Similar questions have been before this court in two cases. In *Nicholson v. Hospital Association*, 97 Kan. 480, 155 Pac. 920, this court declared that—

" 'Charitable associations conducting hospitals are not liable for the negligence of their physicians and attendants resulting in injury to patients unless it is shown that the association maintaining the hospital has not exercised reasonable care in the employment of its physicians and attendants. (Syl. ¶ 1.)'

"In *Davin v. Benevolent Association*, 103 Kan. 48, 172 Pac. 1002, a similar question was presented to this court, and the court there said:

" 'A Charitable hospital corporation is not liable in damages for the failure of its medical superintendent to comply with a contract made by him for the care of a patient being treated in the hospital. (Syl.)'

" 'One reason for this rule is that "trust funds created for benevolent purposes should not be diverted therefrom to pay damages arising from the torts of servants." Another reason is that "public policy encourages the support and maintenance of charitable institutions and protects their funds from the maw of litigation." . . . Both reasons are good. (p. 50.)'

"In these cases this court declared that charitable organizations are not liable for the negligence of its employees or agents. This court now prefers to follow that rule, and put it on the ground that the resources of charitable organizations are trust funds which cannot be subjected to the payment of damages in such cases. It follows that the Salvation Army is not liable to the plaintiff. This does not excuse the defendant Vought." (p. 800.)

See, also, anno. 62 A. L. R. 724.

Appellant argues the rule announced in the Webb case has been relaxed and modified by our later decision in *McMillen v. Summunduwot Lodge*, 143 Kan. 502, 54 P. 2d 985. That case is not con-

trolling here. It was an action against a subordinate lodge of the Independent Order of Odd Fellows. Its incorporation as a subordinate lodge was authorized by statute. The laws governing the organization of such a lodge enabled the lodge to obtain a charter by which it was privileged to use a part of its buildings for purposes other than charity. Another statute authorized a limited satisfaction of a judgment obtained against such a lodge. The limitation was the property it owned and used, in part, for other than charitable purposes. It was by reason of the dual capacity in which the lodge was organized and operated that liability for judgment to the extent of the statutory limitation was upheld. The decision does not conflict with the conclusion or the opinion in *Webb v. Vought,* supra.

The bare allegation in the instant petition with respect to defendant—"that among its activities is the collection of waste paper by donation from the public and baling and selling the same for profit" —does not transform the charter purposes of defendant—"to engage in charitable, educational, missionary, philanthropic and religious work"—into a corporation for profit. The charter expressly states— "That this corporation is organized not for profit, etc." That it is not organized for profit the unverified reply to defendant's answer concedes. The charter further authorizes defendant—"to do everything and carry on every kind of operation necessary and incidental to the maintenance of such work." The petition contains no allegation that defendant's activities in collecting waste paper by donation and selling it for profit does not constitute a necessary and incidental method of maintaining the work of the defendant or that the proceeds from the sale of the scrap paper were not used for that purpose.

It is also common knowledge that one of the methods defendant employs in order to obtain funds with which to advance its charter purposes is to obtain articles by donation and to sell them for whatever can be realized for them. This fact the donor knows. He gives an article with the thought in mind that by reason of the fact it is a donation defendant may give it to some needy person or that it may realize something from its sale and thus enable it better to carry on its humanitarian work of aid and comfort to the distressed. Some of the donated articles in the Webb case, *supra,* were sold. Those transactions were incidental to the work of The Salvation Army and aided it in realizing its charter purpose. They did not make it a corporation for profit. The same is true in the instant case.

The judgment of the trial court is affirmed.