No. 43,473

In the Matter of the Estate of Elmer Fred Bauer, deceased. (MAR-JORIE CARTER, et al., *Appellants*, v. STERLING LODGE No. 171, A. F. & A. M., *Appellee.*)

(390 P. 2d 16)

Opinion filed March 7, 1964.

*Edward Wahl,* of Lyons, argued the cause, and *Bronce Jackson,* of Lyons, was with him on the briefs for appellants.

*Arthur C. Hodgson,* of Lyons, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal again presents the question whether a Masonic lodge has the capacity to take real property devised to it by will. The facts are not in dispute, and those pertinent are briefly summarized: Elmer Fred Bauer, an elderly unmarried Rice County farmer and landowner, died on September 19, 1960, leaving a last will and testament by which he devised the remainder interest in 160 acres of farm land in Rice County to the Sterling Masonic Lodge No. 171 A. F. & A. M. of Sterling, Kansas. A life estate in the real property was devised to a friend and neighbor, Glen H. Warnock, who died on May 28, 1962. At the time of final settlement, the heirs at law of the decedent contended that the lodge

was incapable to receive a devise of real property. The probate court found against the heirs at law, and on appeal the district court upheld the decedent's will and the specific devise to the lodge. The heirs at law have appealed from that judgment.

At the trial in the district court, counsel for the appellants stated there was no oral testimony to be adduced on their behalf. Evidence was presented on behalf of the lodge, and the court, after hearing the evidence, stated:

"Now, the court has heard evidence in this case, introduced by the lodge, tending to prove that the lodge is a charitable organization. As indicated at pretrial, in the case of Clark v. Watkins, 130 Kan. 549, the Supreme Court then said, and I am quoting part of the sentence, and the rest of the sentence doesn't detract from that : 'The Masonic organization is a recognized institution of charity and benevolence.'

". . . that the court could take notice of the holding of the Supreme Court of this state, without the introduction of any evidence whatsoever, and that would be more than adequate support for a finding that the will as written controls, and that this is a valid devise to Chapter 171 of Sterling.

"Accordingly, the court finds that there is no reason whatsoever why the Masonic Lodge of Sterling, Chapter 171, should not be entitled to take title to this real estate.

"Now, the court does not think that under the law there are any strings attached to this whatsoever. It passes to the lodge under the findings that the court is making, if it is necessary for the court to even make those findings, and that it is their property . . ."

In harmony with its statement and findings, the district court entered judgment that the lodge had capacity to take the real property devised by the decedent's will and that it owned the same "without restriction as to its use."

The appellants contend that the devise of real property to the lodge is of no force and effect for the reason that G. S. 1949, 17-1703 prohibits the lodge from taking the real property for any purpose, and that since there was no residuary clause, the devise lapsed and the property descended to the heirs at law.

The appellees contend that the devise of real property to the Sterling lodge vested title in the lodge subject to the life estate of Glen H. Warnock and that upon his death, it owns the property without any restriction or limitation as to its use.

The Sterling lodge was incorporated October 5, 1885, and its Charter was filed in the office of the secretary of state on that date. It was organized pursuant to Compiled Laws of Kansas, 1885, Chapter 23, Article 14, Section 122, the equivalent of G. S. 1949, 17-1701. The statute was first enacted in 1866 (Laws of 1866,

Ch. 57, Sec. 43), and was a part of the general law prescribing the powers and duties. of corporations. (G. S. 1868, Ch. 23, Art. XIV, Sec. 122.) Generally speaking, the act conferred upon any religious society, literary, charitable or benevolent associations, or any grand or subordinate lodge of Free and Accepted Masons or of the Independent Order of the Odd Fellows, with the consent of a majority of its members, to become bodies corporate, and when so organized, it shall have all the powers and privileges and be subject to all the restrictions in the act contained. The act was later amended to include other specific named fraternal organizations, or "any other secret benevolent association or organization."

When the Sterling lodge was incorporated, G. S. 1949, 17-1703 or its equivalent was not then a part of our statutory law. The section was added in 1899 (Laws of 1899, Ch. 164, Sec. 1), and the part here pertinent reads:

"Any subordinate lodge . . . which is under the control of a supreme, grand or other superior organization may purchase, own, manage, control, improve, mortgage and dispose of such real estate, including such suitable building or buildings as may be necessary to provide suitable accommodations for the holding of its meetings and transacting of its business . . . *Provided,* That any such building or buildings as are provided for herein may be used in part for other purposes."

Appellants' entire argument that the Sterling lodge lacks capacity to take the real property devised is based on the holding in *Kennett v. Kidd,* 87 Kan. 652, 125 Pac. 36. That case involved a decedent's will devising property to a local camp of Modern Woodmen, a fraternal insurance company whose legal source of income was limited to dues, premiums and assessments. There, the decedent owned a store at Milford, Kansas, and about a year before his death a stroke of paralysis greatly disabled him so that he was unable to attend the store without help. He owned considerable property and life insurance. After the decedent became partially paralyzed, a membership was applied for in a local Woodmen camp, and certain officers, upon the occasion of a meeting, went to the store where the decedent was initiated into the order as a social member, but he never attended any of its meetings. He was about 80 years of age, very feeble, and possessed none of the qualifications which would naturally lead to his selection as a social member. A member of the organization called upon the decedent and he executed a will devising the bulk of his estate to the local order to be used as the camp saw fit. In an action by an heir at law it was held that the local camp could not take and

hold the property given to it by the will, and upon the consideration of the equivalent of G. S. 1949, 17-1703, the court said:

". . . It is manifest from this legislation that the camp in question can not lawfully hold real estate except such as may be necessary to provide suitable accomodations for holding its meetings and transacting its business, including such buildings upon the real estate as may be necessary for such purposes. When, and only when, such buildings and real estate are necessary for these purposes can the lodge lawfully hold the same, but in that case the buildings themselves need not be confined exclusively to lodge purposes, but if used in part therefor they may be used in part for other purposes, the evident intention being that when a camp needs and erects a lodge building it may make it large enough so that a portion of it may be rented and thus furnish an income as a partial return upon the expenditure. . . ." (l. c. 657, 658.)

A rehearing was granted to enable the parties to fully present their views, and in the opinion on the rehearing (*Kennett v. Kidd*, 89 Kan. 4, 130 Pac. 691) the court said:

". . . But the case is not one of an ordinary corporation, which all agree may take by will unless expressly precluded; it is the case of a local fraternal beneficiary body, which the legislature has confined within a narrow zone of activity, dealing out its powers with a sparing hand. If a man in advanced years can be induced to devote the bulk of his estate to a local camp as was the testator in this case, then there is no reason why other benefactors might not add their gifts until a local organization of a few neighbors could become the holder of property of great value, far beyond any real or imaginary needs for the transaction of its business.

"*The decision is not to be carried beyond its terms and does not interfere with the privileges accorded the societies and associations, including Masons and Odd Fellows, mentioned in section 1830 of the General Statutes of 1909.* (G. S. 1949, 17-1701.) The authority granted to local subordinate organizations by section 1832 (G. S. 1949, 17-1703) in no wise enlarges or changes the source of income from which they may provide necessary buildings, but simply directs how they may handle and hold such property instead of doing so by and through the grand or superior organization." (l. c. 6, 7.) (Emphasis supplied.)

As indicated in its opinion on rehearing, the court carefully distinguished fraternal insurance companies such as the Modern Woodmen from charitable and benevolent organizations such as a Masonic lodge which the court in the instant case found to be in part charitable and in part fraternal and benevolent. The Kennett case limits its application to the organization it was dealing with—a fraternal mutual benefit society authorized to issue certificates of insurance to its members. (*Clark v. Watkins*, 130 Kan. 549, 287 Pac. 244.) Such organizations were then and are today controlled under the insurance sections of the statutes. (G. S. 1949, 40-701, 40-704 and 40-705.) The activities and operations of insurance

companies are much more closely controlled than ordinary corporations.

In 1930, in *Clark v. Watkins*, supra, this court considered whether a Masonic lodge is capable of becoming the beneficiary under a decedent's will, and it was held that *Kennett v. Kidd*, 87 Kan. 652, 125 Pac. 36, was not authority that the Masonic lodge was incapable of becoming a legal recipient of a testamentary gift. In that case the question was raised by a demurrer to a petition which alleged that the decedent executed a will and died in 1927, leaving all of his property to Cable lodge No. 299 of the Ancient Free and Accepted Masons located at Arlington, Kansas, a charitable and benevolent association. There, as here, the appellant heirs at law contended that the lodge lacked capacity to take the property devised. Speaking through Mr. Chief Justice Johnston, the court denied the claim, and it was held:

"A Masonic lodge, a charitable and benevolent organization, is capable of becoming the beneficiary under a will and of the devotion of the property received to charitable uses.

"*Kennett v. Kidd*, 87 Kan. 652, 125 Pac. 36, 89 Kan. 4, 130 Pac. 691, is held not to be an authority that the Masonic lodge is incapable of being a legal recipient of the testamentary gift." (Syl. ¶¶ 1, 2.)

In the opinion it was said:

"The contention of the plaintiffs is that the Masonic lodge was incapable of taking the property left it by the will. The whole argument of plaintiffs is based on the holding in *Kennett v. Kidd*, 87 Kan. 652, 125 Pac. 36, and an opinion on rehearing, 89 Kan. 4, 130 Pac. 691. In that case it was held that under a statutory provision (R. S. 17-1703) a camp of Modern Woodman, *a fraternal insurance company whose legal source of income was limited to dues, premiums and assessments*, could not take and hold property given to it by will. The ruling was based on the fact that *the camp was a fraternal benefit insurance order* whose powers and duties are limited by statute, and who could only act within the provisions prescribed by the legislature. In the opinion it was said of the camp:

" 'There is no trust for charitable uses, there is no charity. There is simply a gift outright to the local camp of a fraternal order of a large amount of property, real and personal, to be used, not as the law provides but as the camp may see fit. While corporations usually are not prohibited from accepting devises and bequests, and while one of sound mind may give his property to whatsoever persons he desires, it appears to be the legislative policy of the state that fraternal beneficiary societies are to be governed by rules and restrictions applying specifically to them; and indeed this may well be, because such societies are not corporations of the ordinary kind or in the usual acception of the term. They are associations of men who voluntarily combine for mutual

benefit, but who can do so only under the terms and provisions prescribed by the legislature.' (*Kennett v. Kidd,* 87 Kan. 652, 659, 125 Pac. 36.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"*The case is not an authority that the Masonic lodge is incapable of receiving the gift made by the testator.* The plaintiff not only pleads that it is a charitable organization but the Masonic organization is a recognized institution of charity and benevolence. No reason is seen why it may not become a beneficiary under a will and apply testamentary and other gifts to charitable uses. It has been said:

" 'It is the settled rule that courts will look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law.' (*Lehnherr v. Feldman,* 110 Kan. 115, 117, 202 Pac. 624.)

"In a note in 5 A. L. R. 1175, where many cases are cited, it is said:

" 'Although the authorities are not in entire harmony, it may be stated as a general rule that a gift to a fraternal order will be upheld as a valid charitable gift.'

"In 1 Schouler on Wills, 6th ed. 45, in speaking of associations like the one in question, it was said:

" 'It has been recently held that such associations can be put into bankruptcy, and also there are various recent decisions in line with modern thought to the effect that they may be the recipients of testamentary favors.' " (l. c. 550, 551.) (Emphasis supplied.)

Since the Masonic lodge, the beneficiary named in the will, was a charitable organization and capable of receiving the gift for charitable uses, this court upheld the district court's ruling sustaining a demurrer to the petition of the plaintiffs heirs at law. And so here. The opinion on rehearing in the Kennett case and the opinion in the Clark case expressly state that *Kennett v. Kidd,* 87 Kan. 652, 125 Pac. 36, is not an authority that the Masonic lodge is incapable of receiving the gift made by the testator. However, in the Clark case, the decedent's will, as here, made outright testamentary gifts to the Arlington lodge and it was held that since the Masonic organization is a recognized institution of charity and benevolence, it was capable of becoming a devisee under a will and of devoting the property received to charitable uses.

As previously indicated, the district court found that the Sterling lodge was in part charitable and in part a fraternal and benevolent organization. An organization may be charitable for one purpose and not charitable for another, that is, it may be noncharitable for taxation purposes (*Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734), but benevolent and charitable for other purposes. (*Masonic Home v. Sedgwick County,* 81 Kan. 859, 106 Pac. 1082; *Robinson v. Hammel,* 154 Kan. 654, 658, 659, 121 P.

2d 200.) In *McMillen v. Summunduwot Lodge,* 143 Kan. 502, 54 P. 2d 985, this court held that a subordinate lodge could have existence as a fraternal organization by the authority of the grand lodge of the order without obtaining a charter from the state, but if it incorporated pursuant to G. S. 1949, 17-1701, it could exercise the powers and privileges as a corporation as therein provided and that when incorporated, a subordinate lodge was a charitable or benevolent organization with statutory and charter powers. The fact that the Sterling lodge is not authorized by the provisions of its Charter to accept a testamentary gift or devise does not bar it from accepting such a gift and devoting it to charitable uses. (*Barger v. French,* 122 Kan. 607, 610, 611, 253 Pac. 230.) Compare *McMillen v. Summunduwot Lodge,* supra, where the provisions of the charter of the lodge authorized it to contract and be contracted with; to sue and be sued in all the courts of the state, and to lease, purchase, hold, sell and convey real or personal property, or acquire the same by donation or bequest.

We think the Clark case controls the decision in this case, and we hold that the testamentary gift to the Sterling lodge is required to be devoted to charitable uses. However, in view of the express provision of G. S. 1949, 17-1703, the lodge would be authorized to sell the property devised and use the proceeds in the erection and maintenance of a suitable building as may be necessary for adequate accomodations for holding its meetings and transacting its business, and that such building may be made large enough so that a portion of it may be rented to thus furnish income to the lodge.

Accordingly, we affirm the district court's judgment sustaining the will and the testamentary gift to the lodge, but modify the judgment to the extent that the property devised be devoted to charitable uses, or, if the property be sold, the proceeds be used for charitable purposes or to provide a suitable building to accomodate its meetings and transact its business.

It is so ordered.

FONTRON, J., not participating.

ROBB, J. (concurring specially): I have no difficulty in concurring in the majority opinion so far as it goes. However, under G. S. 1949, 17-1701, the legislature clearly and unequivocally made it permissive for certain religious, charitable, and benevolent associations to incorporate. Included therein is any grand or *subordi-*

*nate* lodge of Free and Accepted Masons. Further pinpointing these lodges as such is the fact they are included along with "colleges, universities, academies, or seminaries." In my opinion G. S. 1949, 17-1703 gives them the authority to deal with their real estate in the same manner as other corporations and this is emphasized to me by the proviso: "That any such building or buildings as are provided for herein may be used in part for other purposes."

I believe the testator intended the lodge to have this property in fee simple absolute and I cannot see that it does violence to the statutes. To restrict it as the majority opinion does partially tends to defeat the testator's intent.

SCHROEDER, J., dissenting: In my opinion the Sterling Masonic Lodge No. 171, A. F. & A. M., of Sterling, Kansas, a subordinate lodge under the control and jurisdiction of the Kansas Grand Lodge, is incapable of taking and holding the absolute devise of the farm land in question.

The applicable provisions of G. S. 1949, 17-1703 have been construed by the court in *Kennett v. Kidd*, 87 Kan. 652, 125 Pac. 36, and the appellee concedes this statute applies to it in the instant case. It was expressly enacted for "religious, charitable and other organizations." The significant language of the court on rehearing in *Kennett v. Kidd*, 89 Kan. 4, 130 Pac. 691, is not the emphasized portion of the quoted paragraph in the majority opinion, which has reference to grand or superior organizations, but the second sentence of that paragraph which reads:

". . . The authority granted to local subordinate organizations by section 1832 (G. S. 1949, 17-1703) in no wise enlarges or changes the source of income from which they may provide necessary buildings, but simply directs how they may handle and hold such property instead of doing so by and through the grand or superior organization." (p. 7.)

*Kennett v. Kidd*, supra, has never been overruled or modified.

*Clark v. Watkins*, 130 Kan. 549, 287 Pac. 244, did not have the effect of overruling *Kennett v. Kidd*, supra, but was confined by the court to the language of *a petition, which described the lodge as "a charitable and benevolent organization."* The concluding paragraph of the opinion reads:

"The discussion in the present case has taken a wide range, but we confine our decision to the question whether the petition stated a cause of action, and it appearing that the beneficiary named in the will is a charitable asso-

ciation and capable of receiving the gift for a charitable use the court ruled correctly in sustaining a demurrer to plaintiffs' petition." (p. 551.)

This court is committed to the proposition that once a devise or bequest is determined to constitute a charitable trust, courts look with liberality on the instrument creating it for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded. (*In re Estate of Freshour,* 185 Kan. 434, 345 P. 2d 689, 81 A. L. R. 2d 806.)

It would appear from an examination of the language in 17-1703, *supra,* that if a subordinate lodge were permitted to own and hold real estate for any purpose, there would be no reason for the expression "such real estate, including such suitable building or buildings as may be necessary to provide suitable accommodations for the holding of its meetings and transacting of its business" in the statute.

The charter of the Sterling lodge, dated September 30, 1885, under paragraph Second, sets forth its purposes as follows:

"That the purposes for which this Corporation is formed are to purchase and own a hall, with entrances thereto and furniture therefor, in the City of Sterling in Rice County, Kansas, with power to create any necessary indebtedness to obtain the same, and to lease, mortgage or sell the same, and to build, or purchase again, as said Corporation may elect."

It is readily apparent the charter does not authorize the Sterling lodge to conduct charitable activities. Furthermore, the evidence presented in this case does not support the finding of the trial court that the Sterling lodge is a charitable organization.

Prior to the filing of this lawsuit, and prior to the expiration of the life estate involving the quarter section of land in controversy, the members of the Sterling lodge received a letter from its officers. The letter reads:

"When Mr. Warnock passes on, the Lodge will receive clear title to this land. *You can readily see what far reaching possibilities the land offers the Lodge towards receiving a steady income and becoming self-sufficient in the future.* Sterling Lodge No. 171 has been notified it will be required to pay $1,047.01 as its share of inheritance tax, which is due by March 20, 1962. Brother Arthur Hodgson, the attorney retained by your Lodge, informs us this is correct and is the custom of the law.

"The land has an estimated market value of from $30,000.00 to $32,000.00." (Emphasis added.)

Mr. Marrs, a Mason for 52 years, and a member of the Sterling lodge for 30 years, also one of the officers of Sterling lodge who signed the foregoing letter, testified:

"Q. Did you ever make any gifts, as to you say, to charity, to someone in Sterling, that was not a member of your lodge?

"A. Not that I know of."

Actually, Sterling lodge wasn't even charitable to its own members or their families, as shown by further testimony:

"We have made contributions to Mason's families who were in need, but most of those contributions were given by the brothers of the lodge, by taking up a collection, because the lodge was not financially able to make such a contribution. One such example was when the daughter of Lloyd Booker, a member of our lodge was injured. Booker needed financial aid, so the members of the lodge took up a collection."

The portion of the Bauer will in issue on this appeal reads:

"THIRD. I give, devise, and bequeath to the Sterling Masonic Lodge No. 171, A. F. & A. M., the Southwest Quarter of Section 23, Township 21 South, Range 7 West, Rice County, Kansas, with all the incidents and appurtenances thereto, including oil and gas lease or leases and unproduced oil and gas or minerals, subject only to the life estate of Glen H. Warnock set forth in the next preceding paragraph."

It is readily apparent the decedent intended by the above devise to give the Sterling lodge a direct devise of the land in question without any conditions being imposed in the nature of a trust for charitable purposes.

What the court is doing by its decision in this case is to impress a trust upon the above described property contrary to the intention of the testator, as expressed in his will.

It is essential to the creation of a trust that there be a separation of the legal estate from the beneficial enjoyment, and therefore a public charitable trust cannot exist where property is given absolutely to an organization.

The third paragraph of the Bauer will devises 160 acres of farm land worth $30,000 to the Sterling Masonic Lodge. It was the intention of the testator to make such devise absolute—an unrestricted gift to that lodge. The devise in question is not a charitable devise. The court by its decision is rewriting the will of Bauer.

Under 17-1703, *supra*, which provides for "religious, charitable and other organizations," subordinate lodges under the control of superior or grand lodges, whether incorporated or unincorporated, can take and own only so much real estate, and no more, than is necessary to provide a suitable building or buildings as accommodations for the holding of its meetings and the transacting of its business, as such statute was construed in *Kennett v. Kidd*, supra. It

cannot take an absolute, unrestricted gift of real estate under a will which would circumvent the express terms of that statute.

For the reasons heretofore stated, it is respectfully submitted the judgment of the lower court should be reversed.

PRICE, J., joins in the foregoing dissent.