# PENNINGTON *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 582. Submitted December 15, 1913.—Decided January 5, 1914.

The proviso in the back pay and bounty provision in the Sundry Civil Appropriation Act of March 4, 1907, c. 2918, 34 Stat. 1295, 1356, directing accounting officers to follow decisions of this court and of the Court of Claims without regard to former settlements, did not confer a new cause of action upon the holders of other claims against the United States which had been adversely ruled upon theretofore and remove the bar of the statute of limitations from such claims.

The back pay and bounty provision in the Sundry Civil Appropriation Act of 1907 related to certain enumerated claims and the proviso also related exclusively to those claims and is not to be regarded as independent legislation.

This court will not construe a provision in an appropriation act in regard to an enumerated class of claims as expressing the intent of Congress to unsettle past administrative action as to all claims against the Government; such a radical intent would not be expressed in an obscure and uncertain manner.

Even though it may have become a modern practice in Congress to adopt independent legislation by attaching "riders" to appropriation bills, the judiciary is not relieved from the old duty of correctly interpreting the statute when enacted.

A claim of an officer of the United States for extra *per diem* rations under the act of July 5, 1838, and which had been disallowed in 1890 by the accounting officers, was not reinstated by the proviso in the back pay and bounty provision of the Sundry Civil Appropriation Act of March 4, 1907.

48 Ct. Cl. 408, affirmed.

THE facts, which involve the construction of statutes regulating pay and allowances of officers of the army of the United States, are stated in the opinion.

*Mr. George A. King, Mr. William B. King* and *Mr. William E. Harvey* for appellant.

*Mr. Assistant Attorney General Thompson* for the United States.

Mr. Chief Justice White delivered the opinion of the court.

By the judgment appealed from the court below dismissed the petition in which recovery was sought by the appellant, of a stated sum charged to be due him because of the extra *per diem* ration for each five years' service allowed by the act of July 5, 1838, § 15, 5 Stat. 256, 258, c. 162, and the ten per centum increase of yearly pay given for each term of five years' service by Rev. Stat., § 1262. To develop the questions to be decided, we chronologically arrange the facts alleged and somewhat abbreviate their statement, omitting nothing however relevant to the issues.

Stating the petitioner to be a Brigadier General on the retired list, the petition alleged the period of his military service from 1855, when he entered the Military Academy, up to and including 1899, when, as a Brigadier General, he was placed upon the retired list. The arms of the military establishment in which the services of the petitioner were rendered, during the period stated, as well as the various grades through which, by promotion, he passed, were enumerated, the whole period embracing service in the regular army except a brief time between the first of October, 1864, and the first day of August, 1865, when it was alleged he served as an officer of the volunteer service. It was charged that,

"During the entire period of his service as second lieutenant, first lieutenant and captain aforesaid, the practice of the War Department and of the accounting officers of the Treasury Department was not to count service as a cadet in the United States Military Academy in reckoning the term of five years of service for purposes of the additional ration provided by the act of July 5, 1838, or for longevity increase of pay under § 1262 of the Revised Statutes."

The following averments were then made:·

"It was decided by the Supreme Court of the United States on the twenty-seventh day of October, 1884, in the case of United States v. Morton, 112th Volume of United States Reports, p. 3, and on the eleventh day of March, 1889, in the case of United States v. Watson, reported in the 130th Volume of United States Reports, p. 80, that officers of the United States Army were entitled, in computing their rations under said act of July 5, 1838, and in computing their longevity pay under Sec. 1262 of the Revised Statutes, to be credited with their service as cadets in the United States Military Academy.

"Notwithstanding said decisions of the Supreme Court of the United States, the Second Comptroller of the Treasury, on June 20, 1890, decided that he would not allow any claim for additional rations under Sec. 15 of the act of July 5, 1838, aforesaid, and for increase of longevity pay under Sec. 1262 of the Revised Statutes on account of any service not theretofore admitted as forming a proper subject of credit by the previous practice of the Treasury Department as aforesaid."

Although the date when the claim was presented was not stated, it was averred that "After the decisions of the Supreme Court aforesaid in the Morton and Watson cases, a claim was presented by this claimant to the Second Auditor of the Treasury for additional rations and longevity pay due under the acts aforesaid in accordance with the decisions of the Supreme Court aforesaid, and said claim was disallowed [on December 13, 1890,] by the Second Auditor in accordance with the decision of the Second Comptroller of the Treasury of June 20, 1890, as hereinbefore set forth, and no consideration was given by said Auditor to the interpretation of said statutes made by the Supreme Court in said cases."

It was alleged that on the fourth day of March 1907, "a provision of law was passed by Congress as a portion

of the Annual Sundry Civil Appropriation Act, 34 Stat. 1295, 1356," which provision was quoted in full in the petition. It was further alleged "that on the eighteenth day of May, 1908, the Comptroller of the Treasury decided" . . . "that in the future the decisions of the Supreme Court of the United States in the cases aforesaid would be followed by the accounting officers of the Treasury in claims for additional rations and longevity pay aforesaid based upon service as a cadet at the Military Academy of West Point, but it was decided by said Comptroller in various cases that" . . . "the accounting officers of the Treasury would not reopen any claim as aforesaid in which a settlement or adjudication had once been made by their predecessors.'

Following the enactment by Congress of the provision above referred to, it was averred:

"Your petitioner applied to the Auditor for the War Department in July, 1909, for all arrears of pay then due on account of his service aforesaid, particularly for additional rations and longevity pay on account of his service aforesaid as a cadet in the Military Academy. The Auditor for the War Department refused to consider said claim because of the settlement aforesaid dated December 13, 1890, by the Second Auditor then in office, disallowing said claim."

Referring to the provision in the Sundry Civil Appropriation Act of 1907, it was then alleged:

"Your petitioner respectfully represents that by said provision of statute, there was granted to your petitioner a right to be paid additional rations under said act of 1838, and additional longevity pay under said Sec. 1262 of the Revised Statutes for the reason that the decisions of the Supreme Court of the United States and of the Court of Claims of the United States aforesaid held that such rations and longevity pay were due in a similar case, and such decisions should have been followed by said

accounting officers notwithstanding the former settlement or adjudication by one of their predecessors as' aforesaid. The refusal of the accounting officers of the Treasury aforesaid to state a balance in favor of your petitioner on account of the former settlement aforesaid, deprived your petitioner of a right granted under said act of Congress, for which there is no remedy except by action in this court."

Plainly, under this pleading the only ground upon which the right to a recovery was based was the provision in the Sundry Civil Appropriation Act which was counted upon as conferring a substantive new and independent right. The text of the proviso upon which the case depends is this (34 Stat. 1356):

"Back pay and bounty: For payment of amounts for arrears of pay of two and three-year volunteers, for bounty to volunteers and their widows and legal heirs, for bounty under the act of July twenty-eighth, eighteen hundred and sixty-six, and for amounts for commutation of rations to prisoners of war in rebel States, and to soldiers on furlough, that may be certified to be due by the accounting officers of the Treasury during the fiscal year nineteen hundred and eight, $200,000; *Provided*, That in all cases hereafter so certified the said accounting officers shall, in stating balances, follow the decisions of the United States Supreme Court or of the Court of Claims of the United States after the time for appeal has expired, if no appeal be taken, without regard to former settlements or adjudications by their predecessors."

The complaint that the court below held that this provision does not "include the claim of the appellant" is the single matter assigned as error and what is urged to be the correct meaning of the provision is thus stated in argument:

"1. That the above proviso in the act of March 4, 1907, is an acknowledgment of the indebtedness of the United States to all persons whose claims are therein de-

OCTOBER TERM, 1913.

scribed and, as a new promise, takes their claims out of the operation of the statute of limitations.

"2. That upon the refusal of the accounting officers to allow a claim as directed by this proviso, an action may be maintained upon the claim in the Court of Claims because it is a claim 'founded upon  .   .   .  any law of Congress' (Judicial Code, Sec. 145, par. 1st)."

. It is apparent that the construction which the proposition affixes to the proviso does not confine its operation to the character of claims here involved, but extends it so as to embrace all claims of every nature if hereafter it be asserted that a prior administrative determination against the validity of the claim was reached without following the decisions of this court or of the Court of Claims. The foundation principle contended for by which the result just stated is brought about is that by the effect of the proviso, a new cause of action is conferred upon the holder of every claim arising against the Government from its foundation, however remote may have been the time when an adverse ruling was made and however otherwise statutes of limitation would be applicable.

The arguments advanced to sustain the proposition make it clear that such is its scope. For instance, it is insisted that "Congress has by the proviso, enacted that in all cases" "the administrative rule of *res adjudicata* shall not prevail against a judicial decision," and that the purpose of the provision was to remove the bar of all statutes of limitations as to every case to which the enactment relates. The extreme result of the proposition is thus made apparent. That its assertion is not academic becomes obvious when it is observed that maintaining it is essential to meet the requirements of the case, since without the asserted doctrine of new promise and the contention as to the removal of the bar of statutes of limitation the claim sued on would not be justiciable, and could be barred by limitations.

Coming to test the proposition by the text of the provision it is seen that it consists simply of an item in a general appropriation act applying a designated sum to pay an enumerated class of cases, of which this is not one, accompanied with a proviso concerning the steps to be taken to ascertain and pay the claims appropriated for. This makes it clear that the sole ground upon which the proposition rests, is a disregard of all that portion of the provision which precedes the word "provided," thus treating the latter part of the whole clause as distinct and independent legislation.

In other words, the only avenue of approach for the proposition is through a gateway created by wrenching the provision asunder. We are of opinion that this may not be done. (*White* v. *United States*, 191 U. S. 545; *Georgia Banking Company* v. *Smith*, 128 U. S. 174, 181.) But it is insisted that the words following the word "provided" do not technically amount to a proviso and therefore the clause must be divided into two independent parts consisting the one of that portion which goes before the word "provided" and the other that portion which follows it. And when this is done the argument is that the word "all" in the latter portion renders it necessary to give to that portion the far-reaching significance claimed. Conceding for argument's sake that the latter part of the provision, that is, the portion which follows the word "provided," may not be technically a proviso, nevertheless the fact that the two provisions are united in enactment in one and the same clause giving no intrinsic manifestation of a legislative purpose to separate them, causes the concession to be without influence in determining the proper construction of the provision. It is however, urged that at the time of the enactment of the clause there were pending before Congress various bills concerning the action of the executive departments in failing to apply the rulings of this court

as to longevity pay and therefore the provision must have been intended to remedy the evil by the adoption of a general provision accomplishing the results here claimed. The premise, if conceded, serves to refute, instead of to sustain the proposition based on it, for if it be that the purpose of Congress was to unsettle the entire past administrative action as to all claims against the Government and to confuse the entire administration for the future, it cannot be conceived that such a radical intent would have been expressed in such an obscure and uncertain manner. And this leads us finally to examine the contention that as in modern practice it has become common to adopt independent legislation on appropriation bills by what is called a "rider," therefore the provision here involved should be treated as having that character and be accordingly independently interpreted as claimed. But whatever be the new habit, it can in no respect serve to relieve the judiciary, when called upon to consider a statute, of the old duty of correctly interpreting it. Indeed, the very suggestion of the practice of "riders" admonishes that things may not be so associated as one for the purpose of securing the enactment of legislation upon the theory that they are one and when enacted be disassociated for the purpose of judicial construction so as to cause them to be wholly independent one of the other.

*Affirmed.*