No. 35,363

In re Mrs. L. A. Snell, Deceased. (CHARLES W. ROBINSON et al., *Appellants*, v. P. D. HAMMEL, Executor of the Last Will of Mrs. L. A. Snell, Deceased, et al., *Appellees*.)

(121 P. 2d 200)

*C. Vincent Jones* and *Wayne W. Ryan,* both of Clay Center, for the appellants.

*W. M. Beall,* of Clay Center, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This action involves the sufficiency and legality of certain provisions of a will. The trial court held them to be valid, and heirs of the testatrix have appealed.

To avoid expense, the parties have stipulated the material portions of the record. This may be summarized as follows: Mrs. L. A. Snell, a resident of Clay county, died testate February 9, 1940, leaving an estate of more than $17,000. By her will, in the introductory paragraph, she revoked all former wills and codicils thereto. By Item I she directed her executor to pay all her just and provable debts, including expense of last illness, funeral and burial, out of her personal property and estate. In Item II she directed her executor to sell and dispose of all of the remainder of her property and convert the same into money, and gave him full power to execute necessary instruments of conveyance and title and to divide and distribute the proceeds received: (a) One-half thereof to Children's Mercy Hospital, Kansas City, Mo.; (b) one-fourth thereof to the Sunset Home Society of Concordia, Concordia, Kan.; and (the subsection which gives rise to this controversy, which reads):

"(c) The remaining one-fourth (¼) thereof to be given by my said executor to such charitable institution, or institutions, as he may select, the amount to be received by such institutions to be at the absolute discretion of my said executor; provided that the same shall be given by my said executor to some home for the aged, children's or orphan's home or some charitable or benevolent organization."

By Item III she nominated and appointed as such executor P. D. Hammel, of Clay Center, "with full power and authority to carry out the terms of this will as herein directed."

It was stipulated that the major portion of the heirs at law of the decedent duly challenged the sufficiency and legality of subsection (c) of Item II of the will by appropriate pleadings at the time the will was offered for probate, and ever since; that in due time the matter reached the district court of Clay county for its decision, and thereafter and before the court had decided the matter the executor

filed in the probate court an instrument which recited in substance that in the event it shall be determined by the court that subsection (c) of Item II of the will is valid the executor, by virtue of the authority vested in him, had selected the following charitable institutions to receive the remaining one-fourth of said estate mentioned in said subsection (c), in the amounts respectively set after their names: (1) To the Kansas Children's Home and Service League, Topeka, Kan., $500; (2) To Father Flanagan's Home for Boys, Boys Town, Neb., $500; (3) To Sunset Home Society of Concordia, Concordia, Kan., $500; (4) To Children's Mercy Hospital, Kansas City, Mo., the balance and residue of such one-fourth portion of said estate. This matter was called to the attention of the district court and the beneficiaries named therein were made parties defendant, and upon application of the executor the court set a time, heard the matter and determined that each of the beneficiaries so designated is a charitable corporation.

The court, having fully considered the arguments and briefs of counsel, and being advised in the premises, found "that said subsection (c) of Item II of said will is valid in all respects and that this court should enter its decree accordingly." Such a decree was entered. The heirs at law of the testatrix in due time duly served and filed their notice of appeal. It was further stipulated that the main question to be determined by the supreme court is whether or not said subsection (c) of Item II of the will is legal and valid, and the court is asked to decide that question and any subsidiary questions of law necessary to be determined.

While presented with vigor and from various viewpoints, all the arguments on behalf of appellants center in their contention that by the use of the words "or benevolent" near the end of subsection (c) the testatrix made it possible for her executor to distribute the one-fourth of the net estate mentioned in that subsection to noncharitable organizations, hence that the attempted gift failed and the property passed by descent to the heirs at law of the testatrix.

Counsel point out that the word "benevolent" is a word of wider meaning than the word "charitable"; stress the preposition "or," and argue that by the use of the words "charitable or benevolent" the testatrix meant to use the word "benevolent" in its wider meaning and as including something that was not already included within the meaning of the word "charitable." A comparison of the words is found in 7 C. J. 1140 as follows:

"Since the context may qualify or restrict the ordinary meaning of the term 'benevolent,' the word is frequently used as synonymous with 'charitable'; but this is not necessarily so, benevolent being, it seems, a word of somewhat broader, larger and wider meaning than 'charitable.' In other words, charity may be benevolence, but all benevolence is not necessarily charity; and the term includes all gifts prompted by good will or kind feelings toward the recipient, whether an object of charity or not."

The argument overlooks the fact that the terms which form the basis of the argument are used only in a proviso of subsection (c). In the main body of the subsection the remaining one-fourth of the net estate is "to be given by my said executor to such charitable institution, or institutions, as he may select." The ordinary function of a proviso is to impose a condition upon the main provision, or a limitation upon it; rarely, if ever, to enlarge or to overthrow it. The argument of appellants is made just as though the sole thing in the subsection is the wording of the proviso, which of course is not correct, either grammatically or reasonably. In *Pennington v. United States*, 231 U. S. 631, 34 Sup. Ct. 269, where the court had before it a provision in an appropriation act which enumerated certain classes of claims which might be considered by the court without regard to the statute of limitations, but which contained a proviso which it was contended made the appropriation applicable to claims of all cases against the government, it was noted that while the language of the proviso, if standing alone and as the sole provision of the law, might have the effect contended for, it could not have the effect when considered as a proviso. The court said:

"In other words, the only avenue of approach for the proposition" contended for by the claimant "is through a gateway created by wrenching the provision asunder. We are of the opinion that this may not be done." (Citing cases.) (p. 637.)

So here, before appellants are in position to make any serious argument in support of the contention that benevolent means something in addition to charitable they must consider it separate and apart from the body of subsection (c) and as constituting the sole and only measure of the authority of the executor. This, we think, cannot be done. Here the executor was required to distribute one-fourth of the estate to a charitable institution or institutions which he might select, provided they be homes for the aged, children, or orphans; or, if such homes were not decided upon, then to some charitable or benevolent organization. Any of those institutions designated or referred to in the proviso of necessity had to be of the

class mentioned in the body of the subsection, namely, charitable. Hence, if the phrase "or benevolent" is not simply tautology, it necessarily means the type of a benevolent organization which could be a charitable institution designated in the main body of the subsection.

Indeed, if the words "or benevolent" used in the conditional proviso mean anything other than charitable institutions used in the body of the subsection, they must be regarded as invalid. See 14 C. J. S. 497, where the rule is thus stated:

"So, where a vested estate is distinctly given for charitable uses and there are annexed thereto conditions, limitations, powers, trusts, or other restraints relative to its use, management, or disposal, any of which are not sanctioned by law, it is such restraints, and the estates limited on them, that are void, and not the principal or vested estate; and a gift for a charitable purpose does not fail although a limitation which is not an essential part thereof, fails."

There are many authorities to the same effect.

There is no reason to place stress on the word "or." Since from the will as a whole, and particularly the principal portion of subsection (c), the dominant thought in the mind of the testatrix was to dispose of her property for charitable purposes, the word "or" should be construed to mean "and." In *Thorp v. Lund*, 227 Mass. 474, 479, 116 N. E. 946, it was held:

"It is a familiar rule in the interpretation of instruments relating to the establishment of charities that 'the word "or" will be construed to mean "and" when this seems necessary to give effect to the meaning' of the person declaring a general purpose of that sort. (Citing cases.) This rule is applicable, especially in instances where one word expresses a charitable use and the other if standing alone might-not indicate a strict charity. The dominant word is taken to be the one pointing to a charity and the more indefinite word linked with it is held to be narrowed and colored by its context or used as a synonym with it, in order to make effective the main charitable intent."

See, also, *Pell v. Mercer*, 14 R. I. 412.

Appellants cite G. S. 1935, 77-201, subsection 2:

". . . technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

They argue that the word "benevolent" as used in the subsection in question is a word which has a precise, technical meaning, and was so used. While the word has a meaning broader than that of the word "charitable" it is also used frequently in the same sense as "charitable." Webster's New International Dictionary uses the

word "benevolent" in defining "charitable" and the word "charitable" in defining "benevolent," and Soule's Dictionary of English Synonyms gives each as a synonym of the other. Our constitution (art. 11, § 1) and our statute (G. S. 1935, 79-201) place "charitable" and "benevolent" institutions in the same category, and in some of our decisions (*Nuns of St. Dominic v. Younkin*, 118 Kan. 554, 235 Pac. 869, and *McMillen v. Summunduwot Lodge*, 143 Kan. 502, 54 P. 2d 985) the words are used interchangeably. See, also, *Mason v. Zimmerman*, 81 Kan. 799, 106 Pac. 1005; *Masonic Home v. Sedgwick County*, 81 Kan. 859, 106 Pac. 1082, and *Odd Fellows v. Spaeth*, 81 Kan. 894, 106 Pac. 1077.

Whatever may be the meaning of the word "benevolent," if standing alone, there appears to be a unanimity of authority that when used in connection with "charity," as in this will, the terms are synonymous.

In addition to the Kansas cases above cited, see: *Gossett v. Swinney*, 53 F. 2d 772, affirming *Irwin v. Swinney*, 44 F. 2d 172; *Estate of Hinckley*, 58 Cal. 457, 507; *Estate of Dol*, 182 Cal. 159, 187 Pac. 428; *The People v. Y. M. Christian Ass'n*, 365 Ill. 118, 6 N. E. 2d 166; *Bangor v. Masonic Lodge*, 73 Me. 428; *Fox v. Gibbs*, 86 Me. 87, 29 Atl. 940; *Saltonstall & Others v. Sanders & Others*, 93 Mass. (11 Allen), 446; *Suter v. Hilliard*, 132 Mass. 412; *Young Men's Benevolent Soc. v. Fall River*, 160 Mass. 409, 36 N. E. 57; *Assessors of Boston v. Garland School*, 296 Mass. 378, 6 N. E. 2d 374; *Goodale v. Mooney*, 60 N. H. 528; *De Camp v. Dobbins*, 31 N. J. Eq. 671; *People v. Powers*, 29 N. Y. S. 950; *Murphy's Estate. Kurtz's Appeal*, 184 Pa. 310, 39 Atl. 70; *Dulles's Estate*, 218 Pa. 162, 67 Atl. 49; *Parks, Adm'r, v. American Home Missionary Society et al.*, 62 Vt. 19, 20 Atl. 107.

See, also, 3 Page on Wills, § 1214; Restatement, Trusts, §§ 396, 397f, 398 (1) (2) *Comment g;* 10 Am. Jur. Charities, §§ 7, 84, 100, 102.

Under the language used in the will and the above authorities we think it clear the testatrix, by the use of the words "or benevolent," did not intend to authorize her executor to distribute any part of her property to noncharitable purposes.

The judgment of the trial court is affirmed.