IN THE MATTER OF THE ESTATE OF WILLIAM
MINCER, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted March 20, 1985—Decided May 9, 1985.

---

138

Before Judges FRITZ, GAULKIN and LONG.

*Sweeney and Sweeney,* for appellants (*Michael J. Sweeney,* on the brief).

*Joanna S. Burris,* for respondents.

The opinion of the court was delivered by

LONG, J.A.D.

On this appeal, Aetna Johnson and Donna Lee Sprague (the Johnsons) challenge an order of the trial judge dismissing a complaint through which they sought to establish themselves as residuary legatees after Samuel Johnson under the will of William Mincer. Because the trial judge erred in failing to consider evidence of Mincer's intent in the event that his devise to Samuel Johnson lapsed, we reverse.

At the time of his death on January 27, 1984, Mincer was a childless widower whose parents and sole sibling (who was also childless) had predeceased him. Mincer bequeathed $5000 to his church and, in paragraph 3 of his will, disposed of the rest of his worldly goods as follows:

All the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever kind and wheresoever situate, I give, bequeath and devise to my brother-in-law, Samuel Johnson, now residing in Beach Haven, New Jersey.

Samuel Johnson predeceased Mincer. Charles Leonard (the Administrator) who was Mincer's first cousin and who feasibly would be among the intestate takers pursuant to *N.J.S.A.* 3B:5–4 if the devise to Johnson lapsed, applied for and was granted letters of administration. Thereafter, the Johnsons, who are the widow and daughter of Samuel Johnson, filed a complaint seeking a construction of the will establishing that the probable intention of William Mincer as evidenced by the will and relevant circumstances "was that his estate should pass to them as well as to Sandra Lynn Johnson, a minor daughter of the plaintiff, Aetna Johnson, and sister of the plaintiff, Donna L. Sprague."

An order issued directing the Administrator to show cause why the relief in the complaint should not be granted. The Administrator answered denying the Johnsons' allegations and filed a motion for summary judgment dismissing the complaint, claiming that the devise to Samuel Johnson had lapsed. In opposition to the motion the Johnsons argued that they were entitled to a hearing under *N.J.S.A.* 3B:3–33, and outlined a series of facts which would be adduced at the hearing regarding Mincer's probable intent: that Mincer named them as co-beneficiaries with Samuel Johnson on a Banker's Life Insurance Company annuity dated August 7, 1969 which provided for payment of its commuted value to the beneficiaries should the payee die before August 7, 1979; that Mincer named Aetna Johnson the alternate beneficiary after her husband for any pension funds still due from Mincer's Burlington County Bridge Commission pension upon his death; that Mincer expressed to

the Johnsons that they were his only family and informed a neighbor that he intended to benefit them; that he made monetary gifts to the Johnsons after the death of his wife, and that he was godfather to both of the Johnson daughters and had numerous photos of them in his possession. The Johnsons urged that:

The evidence which will be produced by the plaintiffs at the hearing of this matter will demonstrate conclusively that William Mincer would have desired that his sister-in-law, Aetna Johnson, and nieces, Donna Lee Sprague and Sandra Lynn Johnson, receive his residuary estate in the event his brother-in-law, Samuel Johnson, predeceased him. The modern doctrine of probable intent should therefore be applied to see that these subjective desires be implemented.

The Administrator proposed that the following extrinsic evidence would rebut the Johnsons' proofs: that the scrivener of Mincer's will was an experienced and highly respected attorney who knew of the anti-lapse statute; that after his wife died Mincer changed the designated beneficiary of a $5,000 paid-up life insurance policy with American United Life Insurance Company from her to Samuel Johnson, making no mention of the other Johnsons; that Mincer lived all of his life in Mount Holly, New Jersey on a street where many of his mother's relatives lived, as opposed to Beach Haven, New Jersey, where the Johnsons live, and that a short autobiography found among Mincer's personal effects after his death made no mention of the Johnsons.

Without resolving these factual issues the trial judge held that "according to the laws of this state, William Mincer's gifts to his brother-in-law must lapse, and it is, therefore, my conclusion, that the summary judgment should be allowed." This appeal ensued. Because we believe that the trial judge improperly precluded the Johnsons from adducing evidence on the issue of William Mincer's probable intent which might have saved the devise to Samuel Johnson from lapse, we reverse and remand for further proceedings.

■ The trial judge dismissed the Johnson's complaint because the devise to Samuel Johnson had lapsed and because the Johnsons were not members of a class of beneficiaries saved

from lapse under the anti-lapse statute, *N.J.S.A.* 3B:3–35, which provides that:

If a devisee who is a grandparent or a lineal descendant of a grandparent of the testator is dead at the time of the execution of the will, or fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee who survive the testator by 120 hours take in place of the deceased devisee and if they are all of the same degree of kinship to the devisee they take equally, but if of unequal degree then those of more remote degree take by representation. One who would have been a devisee under a class gift if he had survived the testator is treated as a devisee for purposes of this section whether his death occurred before or after the execution of the will.

The trial judge was correct insofar as he held that the devise in question could not be saved by the anti-lapse statute. His reasoning faltered however at the point that he failed to recognize that the statute is not the only method provided by which a devise may be saved from lapse. More particularly, he neglected to consider the doctrine established in *Engle v. Siegel*, 74 *N.J.* 287, 295 (1977) that the court should search for the probable intent of the testator contrary to the literal language of his will where it is established that there has occurred a contingency not forseen or anticipated when the will was drafted. Under such circumstances, courts

... are no longer limited simply to searching out the probable meaning intended by the words and phrases in the will. Relevant circumstances, including the testator's own expressions of intent, *Wilson v. Flowers*, 58 *N.J.* 250, 262–63 (1971), must also be studied, and their significance assayed. Within prescribed limits, guided primarily by the terms of the will, but also giving due weight to other factors mentioned above, a court should strive to construe a testamentary instrument to achieve the result most consonant with the testator's "probable intent." [74 *N.J.* at 291]

Subsequent to *Engel*, the Legislature codified the probable intent doctrine in *N.J.S.A.* 3B:3–33 which provides in relevant part that:

The intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction expressed in N.J.S. 3B:3–33 through N.J.S. 3B:3–48 apply, unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary.

By virtue of this clear statement the Legislature specifically subjected *N.J.S.A.* 3B:3–35, 36 and 37, the statutes governing the question of lapse, to the doctrine of probable intent. For us to accept the Administrator's position here would require the

elimination of the anti-lapse statutes from the scope of *N.J.S.A.* 3B:3–33 by judicial fiat. In our estimation, such an act would "do violence to the doctrine of separation of powers." *Watt v. Mayor & Council of Borough of Franklin*, 21 *N.J.* 274, 277 (1956).

Moreover, none of the Administrator's arguments in any way support the trial judge's grant of summary judgment here. Indeed, to the extent that the Administrator suggests that an analysis of the will and surrounding circumstances reveals that Mincer did not intend to benefit the Johnsons in the event of Samuel Johnson's death, he presents a question for resolution by the trier of fact. The Johnsons placed the probable intent of William Mincer into issue and in light of *N.J.S.A.* 3B:3–33 and *Engle v. Siegel* we view it as clear error on the part of the trial judge to have dismissed the complaint before holding a hearing to determine the question of whether Mincer intended the devise to Johnson to lapse.

Accordingly we reverse and remand for reinstatement of the complaint and such further proceedings as are required by this opinion.